No. 14,597.

THE BOARD OF COMMISSIONERS OF JAY COUNTY *v.* TAYLOR
ET AL.

COUNTY COMMISSIONERS.—*Employment of Attorney.—Public Policy.—When Void as Against.*—A contract entered into between the board of county commissioners and certain attorneys, by which the board employed said attorneys to act as county attorneys for a period of three years from a date mentioned in said contract, is void as against public policy.

SAME.—*Employment of Attorney.—Limit of Authority.*—A board of county commissioners has not the power to bind its successors by employing attorneys to act for a period beyond the time when the board will, by operation of law, have to be reorganized.

ELLIOTT, J., and COFFEY, J., dissent.

From the Jay Circuit Court.

*T. Bosworth* and *F. H. Snyder*, for appellant.

*W. H. Williamson, J. J. M. La Follette, J. A. Jaqua, D. T. Taylor* and *R. H. Hartford*, for appellees.

BERKSHIRE, J.—The appellees sued the appellant upon the following contract:

"This memorandum of agreement, made this day, between the board of commissioners of Jay county of the first

part, and Taylor and Hartford of the second part, witnesseth, that the party of the first part has this day employed and hired the party of the second part as county attorney for Jay county, in the State of Indiana, for a period of three years from the 5th day of December, 1887; the said party of the second part hereby agreeing to attend to all litigation in which the board of commissioners of Jay county is a party, in any of the courts of the State of Indiana, and at all times to render and give the board of commissioners of Jay county, or any member thereof, legal advice at their reasonable request, and also to legally advise and direct any officers of said county of Jay as they may reasonably request from time to time on all matters of law pertaining to their said offices. In consideration of such legal services as aforesaid, the party of the first part, the board of commissioners of Jay county, promises and agrees to pay the party of the second part, Taylor and Hartford, the sum of two hundred dollars per year, payable quarterly, and in case they have to go to any other county to litigate any action in which the board of commissioners is a party, to pay their reasonable expenses, including railroad fare and board, incurred in attending to such litigation.

" In witness whereof, the party of the first part, and the party of the second part, have hereunto set their hands and seals this 14th day of September, 1887.

" L. T. CRAIG.

" R. McKINLEY.

" TAYLOR & HARTFORD."

The complaint is in two paragraphs, to which demurrers were addressed and overruled by the court, and one of the errors assigned rests upon the ruling of the court in overruling said demurrer; but as counsel for the appellant waive this alleged error in their brief, we are not called upon to consider the questions thereby raised.

The appellant answered the complaint in three paragraphs, the first being a general denial.

Demurrers were addressed to the second and third paragraphs; the demurrer to the second paragraph was overruled, and the demurrer to the third paragraph sustained, and exceptions taken.

At the request of the appellant, the court made a special finding, and upon the facts found stated as conclusions of law that the contract was valid and binding upon the appellant, and that the appellees were entitled to recover the sum of fifty dollars.

The appellant excepted to the conclusions of law, and judgment was rendered for the appellees.

The substance of the third paragraph of answer is as follows:

At the time the contract mentioned in the complaint was entered into the board had in its employ as its attorney and legal adviser one John M. Smith, whose term of employment continued until the — day of December, 1887, at which date the board would be reorganized, the term of one of its members expiring and that of another commencing; that the said contract was an employment for a period of time commencing in the future, and after the reorganization of the said board, and was executed for the purpose and with the intention of binding the board as it would be organized on said — day of December, 1887, to accept the services of legal advisers not of its own selection; that appellees never assumed the duties of county attorneys under the said contract, and that the board as thereafter constituted had employed Thomas Bosworth as its legal adviser, who is still serving in that capacity.

The answer was not skilfully drawn, and is not specific in its averments.

If the averments in the answer were as broad as the facts stated in the special finding (not in detail but as would be proper in pleading), the questions intended to be presented could be considered with much more satisfaction by this court.

In considering the answer we must not overlook the character of the contract, which is the foundation of the action. The contract, to say the least of it, is a remarkable one, entered into under unusual circumstances, and which would seem to indicate that the motive which prompted its execution was not the welfare of the public.   By its terms and conditions the services of the appellees are contracted for for a period of three years from December 6th, 1887, and at a time when the board had an attorney employed whose term of service would not expire for three months, and not until after the reorganization of the board, as stated in the answer.

We know as a matter of law that within the time over which the employment under the contract extends, the board must be reorganized at least three times, because of the expiration and commencement of the terms of its members; that, before the said 6th day of December, 1890, there will not be a single member of the board whose term had commenced and was running at the date of the contract unless thereafter re-elected.

It is admitted by the demurrer that the contract was entered into for the purpose and with the intention of binding the new board (so to speak) to accept the services of legal advisers not of its own choosing.

If the contract, such as it is, and entered into for the purpose stated in the answer, is not contrary to public policy, then the demurrer was properly sustained to the answer; but if not a valid and binding contract for the reason that it is against public policy, the demurrer should have been overruled.

In considering this question the effect upon the public interest must have a controlling influence.

To assume that the contract is voidable only, is to concede that the board had the power to enter into such a contract; and, if power existed to make the contract, it must be regarded as valid and binding, unless tainted with fraud sufficient to vitiate or rescind it.   The execution of the con-

tract for the purpose of binding the board in the future, and after there has been a change in its membership, will not, of itself, constitute fraud.   *McCormick* v. *City of Boston,* 120 Mass. 499 ; *Bay State Brick Co.* v. *Foster,* 115 Mass. 431 ; *Benjamin* v. *Wheeler,* 8 Gray, 409 ; *Soon Hing* v. *Crowley,* 113 U. S. 703 ; *Oglesby* v. *Attrill,* 105 U. S. 605.

The contract must be regarded as a valid and binding contract, or as void *ab initio,* because of the fact that it is a contract which is against public policy.

The board of commissioners has authority to employ counsel in matters pertaining to the business of the county, and to give to the members of the board legal advice in relation to their official duties.

If the contract in question is binding, the board of commissioners at one session may employ counsel to serve the board, as then organized, and at the same time employ counsel to serve it in advance, and at a time when it is known the membership of the board will be different.

It is true that under the contract in question, the beginning of the term for which the appellees were employed, was only postponed three months from the date of the employment ; but in the meantime the term of office of one member of the board expired, and that of another began, and if, under such circumstances, attorneys could be engaged three months ahead, why not for one, two or three years in advance ?

But the most obnoxious feature which we find in the contract is, the length of time for which the appellees were employed.

We know as a matter of law, as we have already said, that the membership of the board will be changed as many as three times from the date of the employment to the expiration of the term of service, unless some of its members are re-elected, and in that case the terms of office will be different; unless some of the members are re-elected there must be an entire change in the membership of the board between the date of the employment and the expiration of the time

covered by the contract. This contract deprives the board as reorganized from year to year of the right to employ its attorneys for the next following year.

If such contracts are binding, then no difference how distasteful an attorney may be to the members of the board, or how little confidence they may have in his ability, legal learning or honesty, so long as he performs the conditions of the contract on his part they are bound to recognize him, accept his services and assume the responsibility. And if the contract in question, extending as it does over a period of three years, is valid, why may not a like contract covering a period of six, nine or a dozen years be upheld?

Our conclusion is, that the contract is against public policy and void.

In *St. Joseph, etc., R. R. Co.* v. *Ryan,* 11 Kansas, 602 (15 Am. Rep. 357), it is said by the court : " Railroad corporations are, as we have seen, public agencies, and perform a public duty. They are agencies created by the public, with certain privileges, and subject to certain obligations. A contract that they will not discharge, or by which they can not discharge those obligations, is a breach of that public duty, and can not be enforced."

This portion of the opinion is quoted, with approval, by the Supreme Court of Iowa, in the case of *Williamson* v. *Chicago, etc., R. R. Co.,* 53 Iowa, 126.

See *Fuller* v. *Dame,* 18 Pick. 472, opinion by SHAW, C. J., which is a leading case upon the subject under consideration.

See *Guernsey* v. *Cook,* 120 Mass. 501. In *Craft* v. *Mc-Conoughy,* 79 Ill. 346, the Supreme Court of Illinois, quoting TINDAL, C. J., said : " Whatever is injurious to the interest of the public is void, on the ground of public policy." This language is quoted and approved in the recent case of the *People, ex rel.,* v. *Chicago, etc., Co.,* decided by the same court in a learned and exhaustive opinion, 22 N. E. Rep. 798.

In *Wiley* v. *Baumgardner,* 97 Ind. 66, whatever is injuri-

ous to public interest is recognized as contrary to public policy.

It is evident that the contract involved in this litigation is of that character. It ties the hands of the board of commissioners, and is prejudicial to the free exercise of its power and functions for the public good.

In the *West Virginia, etc., Co.* v. *Ohio River, etc., Co.*, 22 W. Va. 600 (46 Am. Rep. 527), the court say : " The common law will not permit individuals to oblige themselves by a contract either to do or not to do, anything when the thing to be done or omitted is in any degree clearly injurious to the public." Citing *Chappel* v. *Brockway*, 21 Wend. 159. See *People, ex rel.*, v. *Chicago, etc., Co., supra.*

The case of *Reubelt* v. *School Town, etc.*, 106 Ind. 478, is relied upon by the appellees. That case involved the right of the school trustees of the town to employ a school superintendent for the following school year, and before the reorganization of the school board in June, as provided by law. The appellee rested its case upon the construction to be placed upon section 4439, R. S. 1881, claiming that by the provisions of that section the board of school trustees, as organized in May, could not elect a superintendent for the next school year, and thereby bind the board as organized in June ; and the case went off upon that question.

In that case the employment was only for one year. We apprehend that if the board of trustees had undertaken to employ the superintendent for three years a different conclusion would have been reached.

We have not overlooked the suggestion made by counsel for the appellees, that the board of commissioners is a corporation, and continues as such, notwithstanding its membership may be changed, and is liable upon all contracts which it has the power to make.

But the question before us is one of power, and, as we have said, we do not think the board had the power to make the contract in suit.

The judgment is reversed, with instructions to overrule the demurrer to the third paragraph of answer.

### DISSENTING OPINION.

ELLIOTT, J.—I dissent from the prevailing opinion, because I think the contract operated to retain the attorneys, and they are entitled to some compensation. An attorney who is retained is entitled to compensation, although he may not actually render any services.

COFFEY, J., concurs with ELLIOTT, J.

Filed Feb. 4, 1890; petition for a rehearing overruled April 5, 1890.