Summers, J.
The record in this case is imperfect and inartificial, and does not present the question sought to be made as clearly as it should; but we think we can dispose of the case notwithstanding the defects.
On the 5th day of January, 1895, the then board of county commissioners assumed to and did enter into a contract in writing with the plaintiff whereby he was employed as a janitor of the court-house in Franklin county, for the year then next ensuing, at the salary therein named of $80.00 per month, payable monthly; and in pursuance of said contract plaintiff entered upon the discharge of his duties.
On the next day, namely, Sunday, January 6, 1895, the term of office of one member of said board expired; and on the following day his successor was qualified and entered upon the discharge of his official duties. And thereupon the new board adopted a resolution, by the terms of which it was declared that the action of the former board in the appointment and employment of the plaintiff was “reconsidered and rescinded and held as null and void.” And afterwards, on the thirtieth day of January, said new board, by resolution duly adopted, appointed and employed another person to discharge the duties of the position to which the plaintiff had been appointed by the old board.
*302 On the 12th day of February, 1895, the plaintiff presented to the present board of county commissioners a claim for the sum of $80.00 “ for services as janitor of the court house from January 6, 1895, to February 5,1895, as per contract of January 5, 1895.
Thereupon the board adopted a resolution rejecting said claim, and tendering the plaintiff the sum of $80.00, “for services as janitor from the first day of January, 1895, to the first day of February, 1895,” upon the understanding that such “tender was not to be considered a recognition of an alleged contract attempted to be entered into by the board of county commissioners of the date of January 5, 1895.”
Plaintiff excepted to this action, and gave notice of his intention to appeal.
Pleadings -were filed in the common pleas setting forth substantially the facts above recited, and in addition that there was money in the treasury applicable to the payment of the plaintiff’s claim ; and that the new board had notified plaintiff’ that his services would not be required after February 1, etc. It is also asserted that the appointment of plaintiff was in excess of the powers of the old board, because such contract in that behalf was unnecessary.
The court of common pleas found in favor of the plaintiff, and rendered judgment in his favor. To reverse this judgment the defendant prosecutes this proceeding.
Among other things it is urged that the employment of the plaintiff was unnecessary, and that being so it was not in the power of the board to make the contract, and reference is made to Revised Statutes, section 853, as authority for such contention. But we think the statute is not to be construed as requiring an absolute necessity for the employment of janitors. On the other hand, it is not to be construed as meaning merely that the commissioners might, at any session, do the things necessary to make a contract; that is pass a resolution, call the yeas and- nays, etc.; that would be to give it no meaning. If the thing to be done is necessary, then the commissioners are authorized to do it.
*303 “ A transposition of words is to be made whenever the intention of the legislature and the context require such change. Thus ‘current expenses of the year/ was read ‘expenses of the current year.’” Endlich on Inter., 434; Babcock v. Goodrich, 47 Cal. 488.
“ The board of commissioners of the county is a quasi corporation, a local corporation which, for the purposes of civil administration, is invested with a few of the functions characteristic of a corporate existence. A grant of powers to such a corporation must be strictly construed. When acting under a special power it must act strictly on the conditions under which it is given.” Treadwell v. Commissioners, 11 Ohio St. 183.
The maxim “ omnia prcesumuntur rite esse acta" does not apply to .give jurisdiction to magistrates or other inferior tribunals. Best’s Principles of Evidence, section 361.
In Anderson v. Commissioners of Hamilton County, 12 Ohio St. 635, this maxim was recognized, but it was held in that case that the commissioners’ road record in the proceeding under consideration in that case might be considered as prima facie evidence of the establishment of the road, although unaccompanied by proof of the essential requisites to the exercise of the jurisdiction conferred. But it was held to be prima facie only, and that it might be impeached in a collateral proceeding. In this case, however, it is averred in the answer that the contract was unnecessary, and to this answer no reply is filed, so that, if pleadings are necessary, it is admitted by the pleadings that it was not necessary to make the contract. Unless, therefore, the commissioners had power to make contracts for the employment of janitors, whether there was any necessity or not for their employment, and whether or not the interests of the public would be subserved by their employment, we must hold that the court erred in rendering judgment for the plaintiff below.
In the Board of Commissioners of Jay County v. Taylor, 123 Ind. 148, it was held : “A board of county commissioners *304 has not the power to bind its successors by employing attorneys to act for a period beyond the time when the board will, by operation of law have to be re-organized.” The court say : “ In considering the answer we must not overlook the character of the contract, which is the foundation of the action. The contract, to say the least of it, is a remarkable ■ one, entered into under unusual circumstances, and which would seem to indicate that the motive which prompted its execution was not the welfare of the public. By its terms and conditions the services of the appellees are contracted for for a period of three years from December 6, 1887, and at a time when the board had an attorney employed whose term of service would not expire for three months, and not until after the reorganization of the board, as stated in the answér.
“We know as a matter of law that within the time over which the employment under the contract extends the board must be reorganized at least three times, because of the expiration and commencement of the terms of its members; that, before the said 6th day of December, 1890, there will not be a single member of the board whose term had commenced and was running at the date of the contract, unless thereafter reelected. It is admitted by the demurrer that the contract was entered into for the purpose and with the intention or binding the new board (so to speak) to accept the services of legal advisers not of its own choosing.”
The court say further: “ This contract deprives the board, as reorganized from year to year, of the right to employ its attorneys for the next following year. If such contracts are binding, then no difference how distasteful an attorney may be to the members of the board, or how little confidence they may have in his ability, legal learning or honesty, so long as he performs the conditions of the contract on his part they are bound to recognize him, accept his services, and assume the responsibility. And if the contract in question, extending as it does over a period of three years, is valid, why may not a like contract covering a period of six, nine or a dozen years *305 be upheld ? Our conclusion is that the contract is against public policy, and void.”
Again, the court says: “In Craft v. McConoughy, 79 Ill. 436, the Supreme Court of Illinois^ quoting Tindal, C. J., said: ‘ Whatever is injurious to the interest of the public is void, on the ground of public policy.’ This language is quoted and approved in a recent case of The People ex rel. v. The Chicago, etc., Company, decided by he same court in the learned and exhaustive opinion in 22 N. E. Rep. 798.” It is evident that the contract involved in this litigation is of that character. It ties the hands of the board of commissioners, and is prejudicial to the free exercise of its powers and functions for public good. ”
The court also refer to Reubelt v. School Town, 106 Ind. 478, and say that that ease went off upon the construction of a statute. The court further say: “We have not overlooked the suggestion made by counsel for the appellees, that the board of commissioners is a corporation, and continues as such, notwithstanding its membership may be changed, and is liable upon all contracts which it has the power to make. But the question before us is one of power, and, as we have said, we do not think the board had the power to make the contract in suit.”
In Sheldon v. Commissioners of Butler County, 48 Kansas, 366, the commissioners had made the contract for the county printing for a period of two years, which period extended beyond the term of office of one of the members of the board. The board was required by statute to organize each year by the election of a chairman, and the court says: “As the legislature has provided that the boards of county commissioners of the several counties of the state shall have exclusive control to designate a paper and to control the county printing, this, of course, meaus that the board of county commissioners of each county has that power; therefore, as the board of county commissioners of a county, after one year, is dissolved as an organized body, such board ought not to have the con *306 trol of the county printing after one year, or for an indefinite term of years. Each board of county commissioners of each county has the authority and responsibility in designating the official newspaper of the county, and as a necessary result in providing for the county printing. If the board of county commissioners of a county could tie the hands of a subsequent board in designating the official newspaper and in contracting for the county printing, it might tie the hands of subsequent boards for several years, at least for what would be a reasonable time; and it would be difficult to determine, what, under all the circumstances of the case, would be a reasonable time. It follows logically that the board of county commissioners of a county must be limited to one year, or until the body is dissolved, or else its power is unlimited in this respect, and it may designate a paper as the official newspaper of the county for two, three, or four more years, at least for a reasonable time, which is almost indefinite.” And the contract on these grounds is held void.
In Waite v. Ray, 67 N. Y. 36, the court held : “ The power given to school district trustees to contract with and employ teachers, is not limited to an employment during the trustee’s term of office; but the contract with a teacher for a period extending beyond their term, if made in good faith without fraud or collusion, and for a reasonable period, is valid and binding npon their successors.”
The court says, “trustees have the power to contract with, and employ all teachers in the district school or schools. (Laws of 164, chapter 555, page 1253); this power is general and unlimited. If it had been intended that the contracts ’which they are authorized to make, should not extend beyond their term of office, this general language would have been limited. The school year commences with the first day of October, and ends with the 30tb day of September, in each year. And the term of office of a sole trustee is one year, extending from the annual meeting on the second Tuesday of October, to the next annual meeting on the same day. It *307 would certainly be found quite embarrassing frequently, if no one had the power, prior to the second Tuesday of October, to employ a teacher for the remainder of the fall and winter, and to have the school brought to a stop at that unusual time. The office of trustee may become vacant by death, refusal to serve, incapacity, removal from the district, or removal from office, and his term of office may thus be curtailed. And it would be a strange construction of the statute which would terminate the teacher’s contract with every such termination of the trustee’s office.”
The court further says : “ This power, like other power confided to public officers, may be abused, but the fact that it may be abused, furnishes no argument against its existence. The danger of abuse, however, is very small, as a hiring for an unusual time would be strong evidence of fraud and collusion ; and if a teacher, under such circumstances, should persist in teaching against the protests of the district, the state superintendent might find cause to annul his certificate, and thus terminate his employment.”
This case was strongly relied upon by counsel for plaintiff below, and also the case in 106 Ind. The court below relied upon these cases and the case of The Commissioners of Scioto v. Gherky, Wright’s Rep. 493.
The "last case, we think, has no application. Our statutes, like those of Nansas, provide for a yearly organization of the boards. Section 848, as amended, vol. 89 O. L., page 220,provides that the board of county commissioners shall organize annually on the first Monday of January.
“By public policy, is intended that principle of the law, which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good, which;may be termed the policy of the law, or public policy, in relation to the administration of the law.” Green-hood on Public Policy, page 5.
Again, the same author says : “ The courts will never recognize any transaction, which in its object, operation or ten *308 dency, is calculated to be prejudicial to the public welfare. No judge better expressed the importance of the element of public policy in law, than did Wilmot, C. J., when he said : f It is the duty of all courts of justice, to keep their eye steadily upon the interests of the public, even in the administration of commutative justice; and when they find an action is founded upon a claim injurious to the public, and which has a bad tendency, to give it no countenance or assistance in foro■ civili.’ ” And this expression is approved by Bbinkebhoee, J., in Crawford and Murray v. Wick, 18 Ohio St. 190. The-strength of every contract lies in the power of the promisee to appeal to the courts of public justice for its enforcement, or for redress for its violation. Our courts are instituted for the protection of public interests, as well as the enforcement of private rights. The courts, therefore, owe it to the public to-refuse their aid to the enforcement of a contract, the tendency of which is prejudicial to the public welfare.
We fully concur in what was said in State ex rel. Attorney-General v. Thompson, 9 O. C. C. 161, and believe that in the absence of some necessity or special circumstances, showing that the public good required it, such a contract, as the one-under consideration, made by an expiring board, and which' has the effect to forstall the action of its successor for a year,, is not only evidence of unseemly conduct on the part* of the-members of the board, but in its object, operation and tendency,, is calculated to be prejudicial to the public interests, and is against public policy, and void.
The maxim, omnia praesumuntur rite esse acta,” rests largely on the ground of public policy, so that in a case of this character, where the contract prima facie has a bad tendency, the maxim does not apply, and a court might well refuse to-enforce the contract in the absence of a showing that it was made in good faith, and in the interests of the public, even though it might hold that the question of the necessity for the employment of a janitor was one of discretion and not of jurisdiction. This contract was made on Saturday, the last *309 working day of the board. On the following Monday, the new board came into existence. No necessity of an employment for a year is shown. Indeed, it is conceded by the pleadings that the employment was unnecessary, and a contract made under such circumstances and for such length of time, is strong evidence, to say the least, that the only object in making the contract was to forestall the action of the new board. We, therefore, hold that the contract is void, as against public policy.
Joseph H. Dyer and Henry A. Williams, Prosecuting Attorneys, for plaintiffs in error.
C. C. Williams and Geo. B. Okey, for defendants in error.
The court of common pleas, therefore, erred in entering judgment for the plaintiff below, and the judgment will be reversed and judgment rendered for the plaintiffs in error.