## MIDLAND COUNTY v. C. C. SLAUGHTER ET AL.

### Decided May 28, 1910.

**1.—County School Land—Lease—Constitutional Law.**

The power given to counties by section 6, article VII, of the Constitution to sell or "dispose" of their public school lands, authorizes the counties to lease said lands for a reasonable length of time.

**2.—Same—Lease and Option—Void Contract.**

A Commissioners' Court had no power in 1895 to execute a lease of the county school lands for a term of twenty years coupled with an exclusive option in favor of the lessee to buy the land at any time during the term of the lease at one dollar an acre payable twenty years from the date of the exercise of the option with four percent interest. Said court was without authority to thus bind the county and succeeding Commissioners' Courts for a possible period of forty years. Such contract was void because unreasonable and against public policy, and the county could recover possession of the land in an action of trespass to try title. Justice Speer dissenting.

**3.—Same—Receipt of Rentals—No Ratification.**

The fact that the county authorities received for a number of years the rentals from a void lease of the county school lands, would not vitalize or ratify the contract of lease. That could not be done indirectly which could not be done directly.

Error from the District Court of Lubbock County. Tried below before Hon. L. S. Kinder.

*Caldwell & Whittaker, Geo. R. Bean* and *A. H. Kirby,* for plaintiff in error.—The Commissioners' Court of a county is without power or authority to make a contract for the lease of the county school lands for a period of twenty years at a fixed rental, and thereby deprive succeeding courts of power to lease or sell said lands for a price which will produce a greater revenue for the school fund of the county. City of Brenham v. Brenham Water Company, 67 Texas, 561; Jay County v. Taylor, 7 L. R. A., 160; Millikin v. Edgar County, 18 L. R. A., 447; Sheldon v. Fox, 16 L. R. A., 257; Pulaski County v. Shields, 29 N. E., 385; 1 Abbott on Municipal Corp., 575.

A Commissioners' Court has no power or authority to contract to sell the county school lands at a fixed price to a particular individual at any time within twenty years when called upon by such person to do so, and a contract based in whole or in part upon such provision and consideration, is void. Edwards County v. Jennings, 89 Texas, 618, and authorities cited.

An entire contract (contradistinguished from a divisible contract) based upon a proposition containing a provision (condition) incorporated in said contract, which one of the parties had no authority or power to make, is void not only as to the void provision, but as a whole. Edwards County v. Jennings, 89 Texas, 618; Evants v. Fuqua, 102 Texas, 430; Hagler v. Ferguson, 102 Texas, 432; Michael v. Hoffstead, 98 N. W., 1078; Wilber v. Stoepel, 21 Am. St. Rep., 573.

*G. G. Wright* and *K. R. Craig,* for defendants in error.

CONNER, CHIEF JUSTICE.—This suit was instituted by Midland County in the form of an action of trespass to try title to recover the four leagues of Midland County school land, situated in Cochran and Hockley Counties. The defendants answered by a general denial and pleas of not guilty. The case was tried by the court without a jury and judgment entered on May 5. 1908, that plaintiff, Midland County, take nothing and pay all costs; and from this judgment, said plaintiff has duly prosecuted this writ of error.

The court filed his conclusions of fact and law, from which it appears that prior to all dates herein specified, the lands in controversy were granted to Midland County for its permanent free school fund; that on or about the 14th day of May, 1895, The Commissioners' Court of Midland County, by an order duly made and entered upon the minutes of the court; accepted, as per contract entered upon the minutes of the court, a proposition by John Scharbauer for the lease of said lands for the term of twenty years, at the rental price of four cents per acre for the first year, and four and one-half cents per acre for each succeeding year thereafter, and granted to said Scharbauer the option to purchase said land at any time during the life of said lease, at the price of one dollar per acre, payable twenty years from the date of the exercise of said option with interest at the rate of four percent per annum, payable annually in advance; that on the 8th of August, 1898, the Commissioners' Court of Midland County entered an order on the minutes of said court granting to John Scharbauer the privilege of subletting the lands embraced in the lease, but pro-

viding that he should not be released from his liability on his contract for the payments of the rentals; that on the 13th of April, 1900, John Scharbauer, by an instrument of writing duly executed and acknowledged, conveyed to C. C. Slaughter all his right, title and interest in the land embraced in the lease. C. C. Slaughter afterwards conveyed to the defendant in error C. C. Slaughter Cattle Company, which was the real party in interest below. It further appears from the findings that since the assignment to Slaughter, the rents stipulated for in the contract were regularly paid every year, as evidenced by the receipts of the county treasurer, until June, 1907, upon which date a legal tender of the amount of the annual rent was made by C. C. Slaughter to the county treasurer of Midland County, but which tender the treasurer refused, being so instructed by the Commissioners' Court. The tender was continued by appellee's offer in open court to pay all rentals due, but such offer was also refused. There are some other findings, but none that we deem it material to here state. The court concluded, from the facts found, that the lease was still in force and that the defendants were lawfully in possession of the land, and judgment was accordingly rendered in defendants in error's favor.

Certified copies of the various contracts and orders referred to, attested by the signature and seal of the County Court, were read in evidence, but to which plaintiff in error objected because they had not been authenticated by the seal of the Commissioners' Court, instead of that of the County Court, as required by article 1556 of the Revised Statutes, and the objections are brought before us by a number of assignments which, in view of the conclusions we have reached, we deem unnecessary to determine.

Section 6, article vii of the State Constitution, so far as applicable, provides that: "All lands heretofore or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively to which they were granted, and title thereto is vested in said counties, and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the Commissioners' Court of the county. Actual settlers residing on said lands shall be protected in the prior right of purchasing the same to the extent of their settlement, not to exceed one hundred and sixty acres, at the price fixed by said court, which price shall not include the value of existing improvements made thereon, by such settlers. Said lands, and the proceeds thereof when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the United States, the State of Texas, or counties in said State, or in such other securities and under such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest due thereon, and other revenue except the principal, shall be available fund."

Other than this, we have been unable to find any statute or decision of our State that affords any clear guide. The power given to counties by this constitutional provision, however, to "sell or dispose of its lands in whole or in part," in the absence of any limitation, (and we find none), doubtless authorizes counties to lease school lands granted

to them for public free school purposes, for at least a reasonable period; and in view of the fact that plaintiff in error did not, in this action, specifically seek to rescind or cancel the lease to John Scharbauer as unreasonable, we perhaps, are not authorized to hold that the lease for the term of twenty years is void on this ground alone, and unless the lease contract is void, we think the plaintiff in error was properly denied a recovery in this action. In this connection, however, it is perhaps not unworthy of notice that at no period in the history of our legislation, has the Legislature authorized the lease of the State public free school lands for a longer term than ten years.

But if it be conceded that, under the circumstances existing at the time of the execution of the lease under consideration, twenty years was not unreasonable, and if it be further conceded that at the time of the execution of the lease, one dollar per acre was the reasonable value of the land, we nevertheless think that the Commissioners' Court was without power, as attempted, to bind the county and some twenty other Commissioners' Courts that might succeed them. The long term of the lease is not the only feature that is to be considered. It specifically attempts to grant the right to John Scharbauer at any time during the continuance of the term, regardless of change in conditions or values, the exclusive right to purchase the land at one dollar per acre, payable twenty years from the date of the exercise of the option, with interest at the rate of four percent per annum, payable annually in advance. In so doing, we think the Commissioners' Court, a mere agent of the county for the execution of the trust reposed by the Constitution, exceeded their power. By the terms of the written proposition of Scharbauer, which is made a part of the court's findings and which was accepted by the Commissioners' Court and entered upon its minutes, such option was made the condition upon which Scharbauer's offer to lease was made. In our opinion, we have no authority to reject this feature of the contract and maintain the validity of the remainder. The contract is entire and the vice taints the whole. If the contract was a valid one, John Scharbauer immediately, before the twenty-year term had expired, might purchase the land at one dollar per acre and extend the time of payment therefor, at a low rate of interest, for a further period of twenty years. We believe that any such preference right was void on the ground of public policy, and that the lease as a whole, was so intimately connected therewith and dependent thereon as that the entire contract was a nullity.

While the Constitution itself declares that the lands granted to counties for educational purposes shall become the property of the counties, the grant is made just as plainly "alone as a trust for the benefit of public schools." The county, then, and its Commissioners' Court, which is but the acting agent, is but a trustee and subject, as other trustees, to the restraining power of the courts to prevent a diversion or waste of the trust fund. It must follow, too, as in the case of other trustees, that in the sale or disposition of the county school lands, the county or Commissioners' Court can exercise only such authority as has been expressly, or by necessary implication, granted. The full extent of this authority is to "sell or dispose of" the lands. The *manner* of doing this only is left to the discretion of the Commissioners' Court,

and we think, in view of the trust, it may well be doubted whether the power to "sell or dispose of" the land includes the power to give, for any period of time, an option or preference right to any one other than an actual settler, to purchase the same. An option seems scarcely to be either a sale or a disposition within the meaning of the Constitution. It is a mere privilege. A contract which only binds the maker.

But without stopping to cite definitions or to draw distinctions between the Commissioners' Court and agents generally in order to give force to the suggestion, and if it be conceded that the power conferred is broad enough to authorize the Commissioners' Court to give an option, it certainly must be a reasonable one. Nothing beyond this can be supported by any construction, and we think the option under consideration, because of the facts already stated, is unreasonable as a matter of law.

In the case of Jay County v. Taylor, reported in 7 L. R. A. 160, the Supreme Court of Indiana held that a contract by a board of County Commissioners which attempted to employ a legal adviser for a period extending beyond the time of incumbency of the board, was against public policy and void. The Illinois Supreme Court, in the case of Millikin v. Edgar County, reported in 18 L. R. A. 447, held that a contract for the employment of a keeper of a county poor house for three years was not within the power of a Board of Supervisors, each of whom is elected for one year only, although the statute gave them power to appoint such keeper without any express limitation as to the time. The court said: "If the board had the power to enter into a binding contract of this character for three years, no reason is perceived why it might not make a contract for five or even ten years, and if this could be done, the hands of succeeding boards would be tied—their powers taken from them. If this important power—the supervision of a poor farm and the care of the unfortunate—may be so far delegated as was attempted in this case, the county might be deprived in a great measure, of one of the most important affairs entrusted to its supervision."

These remarks, we think, have force in the presnt case. The duty of the county was that of a trustee, and the duty of its agent, the Commissioners' Court, was to see that the trust was faithfully executed, and it seems perfectly unreasonable that one Commissioners' Court, which, under our law can not, without re-election, continue longer than two years, shall be held to have the power to bind succeeding Commissioners' Courts for a period of forty years.

It was shown that, after the execution of the contract and after its assignment to C. C. Slaughter and the Slaughter Cattle Company, the prescribed rents for a number of years had been received by the treasurer of Midland County, with the knowledge and consent of the Commissioners. But we do not think a contract originally void for want of power of execution is thereby vitalized. Neither the county treasurer nor the Commissioners' Court could thus, indirectly, by way of ratification, exercise a greater power than might have been exercised in the first instance, and directly.

We conclude, as before stated, that the contract of Scharbauer was void as against public policy, and the appellees in this case, having

full notice thereof, can maintain no right thereon. It follows that upon the court's findings of fact and the undisputed evidence, Midland County was entitled to recover. The judgment, therefore, will be reversed and here rendered in favor of plaintiff in error.

*Reversed and rendered.*

SPEER, ASSOCIATE JUSTICE, dissenting.—I am forced to dissent from the conclusions of the majority and the grounds of my dissent are fundamental, involving a construction of the constitutional provision vesting the title to school lands in the several counties of the State. I concur in the conclusion, that since plaintiff in error has not sought to rescind or cancel the lease to Scharbauer, the judgment of the District Court must be affirmed unless the lease contract is absolutely void. The majority have held that the lease is void, not because it is a lease, but because of the option feature given to Scharbauer, authorizing him to purchase the land at the price and on the terms stated at any time within the period of his lease. To this conclusion I can not agree. Section 6, article vii, of the Constitution, vests in the respective counties of the State their school lands in the following words: "All lands heretofore or hereafter granted to the several counties of this State for educational purposes are of right the property of said counties, respectively, to which they are granted, and title thereto is vested in said counties and no adverse possession or limitation shall ever be available against the title of any county." The framers of the Constitution had the right, of course, to designate the manner in which the counties should handle, control, or deal with this property to the end that the purposes of the grant should be served, to wit: the creation of a trust for the benefit of public schools therein. This they have done in the following language: "Each county may sell or dispose of its lands in whole or in part, in any manner to be provided by the Commissioners' Court of the county." This, so far as my search has shown, is the only authority for, or limitation upon the management of the county lands by the Commissioners' Court, (save the provision concerning the prior right of actual settlers to purchase, in no manner pertinent to the question under consideration). Now, the county is expressly authorized to sell, and it may well be argued that this carries with it the power to give an option, since an option, at last, is only an incident of a sale. It is merely an offer of a sale continued by agreement for a definite time. In one sense, an option is included in every offer to sell, that is, the buyer is given a time, short or long, according to the exigencies of the situation, within which to accept. Can it be said that Midland County, having the express power to sell her school lands, is powerless to make an option of sale allowing the proposed purchaser a day, a week or a month in which to accept the offer? The ultimate logic of the majority opinion is to answer this question in the affirmative.

But the power of the county is not limited to sales. It "may sell or dispose of" its lands in whole or in part, in such manner as its Commissioners' Court may provide. Now, all the authorities agree that the power conferred by the use of the words "dispose of," is much broader than that conferred by the use of the word "sell." It is per-

fectly apparent that the framers of the Constitution meant to confer more power upon the county than the power to sell, otherwise, the expression "or dispose of" would be a superfluity, and meaningless. It is a rule of statutory construction which no lawyer will question, that an Act should be so interpreted as to give to every word a meaning, where that is possible, consistent with the purposes of the statute. I apprehend that it is by virtue of the county's power to dispose of its lands, rather than by virtue of its power to sell, that leases of the county's lands have been upheld. A lease is not within the power to sell, but is within the power to dispose of. Hill v. Sumner, 132 U. S., 118, 33 L. ed., 284; U. S. v. Gratiot, 39 U. S., 526, 10 L. ed., 573. It has been held by eminent authorities that the power to dispose of lands, includes the power to make partition thereof, (Phelps v. Harris (U. S.) 25 L. ed., 855), to mortgage (Platt v. Union Pacific R. Co., (U. S.) 25 L. ed., 424; Benz v. Fabian (N. J.), 35 Atl. 760; Faulk v. Dashiell, 62 Texas, 642), to exchange (Thurmond v. Faith, 69 Ga., 832), and to manage (Sheffield v. Orrery, 3 Atk. [Eng.] 282).

With this general power thus conferred on the counties with respect to their school lands, having in view the beneficent purposes of the trust, to wit, the advantageous management of the fund for the creation of revenue for the benefit of the public schools, I see no reason for denying the counties the right to give an option in connection with an offer to sell the county lands. I am aware of the fact that the majority opinion does not expressly hold that the Commissioners' Court of appellant county did not have this power, but I think the conclusion actually reached necessarily involves this holding. The specific holding of the majority is, that the act of the Commissioners' Court in granting to Scharbauer an option to purchase the land at the price and on the terms stipulated at any time within the life of his twenty-year lease, was in excess of their power, and therefore, absolutely void as against public policy. The only authorities cited for this decision are those of Jay County v. Taylor (Ind.), 7 L. R. A. 160, and Millikin v. Edgar County (Ill.), 18 L. R. A. 447. I do not think either of these decisions is authority for the majority holding, for in neither of them was it necessary to hold the contract absolutely void, since in each, the action was between the original parties and the validity of the contract was thus directly attacked. It is true, in the case first cited the language of the court would justify the effect given to it by the majority. Furthermore, I doubt the soundness of those decisions. I think it is stating the rule too broadly, as is in effect done in the majority opinion, to say that the Commissioners' Court of a county in this State can enter into no contract concerning the county lands, that is binding on their successors in office. Every sale and every lease for more than two years, necessarily, would fall by such a rule. Indeed, if this rule is to obtain, the Commissioners' Courts would only be authorized to lease the county lands, or loan the proceeds of the same when sold, during their tenure of office, which might not extend beyond a few days or weeks, and the right to manage the same to the best interests of the public schools, would be seriously hampered.

My opinion is that the whole question in this case is, whether or not

the contract under consideration was voidable, and if so, the remedy of appellant county was an action to set aside, and not one of trespass to try title.    I do not think it can be held as matter of law that a lease for twenty years, including an option to buy county school lands within that time at the price and on the terms shown in this case, is void, but at most, the cause of action is of equitable cognizance for fraud, duress or unreasonableness.    Such a contract is not necessarily unfair to the county, for the proposed price and terms may have been such, under the circumstances, as to be greatly in the county's favor. One could easily imagine such a case.    Would it still be held void as contrary to public policy?    Again, the agreement to give an option may have been a potent factor in securing to the country an advantageous lease.

Entertaining these views, so widely different from those of the majority, with respect to the powers of the County Commissioners, I deem it my duty to enter this dissent.

Writ of error refused.