ALLEN et ux. v. FRANKS et al. (No. 7889.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 14, 1914. On Motion for Rehearing, April 11, 1914.)

FIXTURES (§ 5*)—TITLE TO BUILDINGS—ERECTION ON LAND CONVEYED SUBJECT TO CONDITIONS.

Under Rev. St. 1911, art. 2822, providing that the trustees of school districts may receive gifts, grants, donations, or devises for the use of the public schools, article 2844, authorizing them to contract for the erection of school buildings and superintend their construction, article 2845, providing that no mechanic, etc., or other person can contract for or in any manner have or acquire any lien on a schoolhouse or the land upon which it is situated, article 2847, providing that schoolhouses shall be under the control of the district trustees, and article 2849, providing that all conveyances, devises, and bequests for the benefit of public schools shall when not otherwise directed by the grantor or devisor vest in the county judge or the trustees as trustees for those to be benefited thereby, and when not otherwise directed shall be administered by such officers under rules established by the state superintendent, where land was conveyed to school trustees upon the condition that it should revert to the grantors when it ceased to be used for school purposes, and a school building was erected thereon from contributions made by citizens of the community, the building did not become a part of the land so as to revert to the grantor and could be removed by the trustees when the land ceased to be used for school purposes, though the contributors and the trustees contemplated that the building should remain on the land permanently, since the contributors were chargeable with notice of the statutory provisions giving absolute control of the building to the trustees and prohibiting liens, while the trustees had no power to vest title to the building in the grantors without consideration or to bind their successors by such act, as this would be a breach of their trust and contrary to public policy.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 4; Dec. Dig. § 5.*]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by W. M. Allen and wife against J. A. Franks and others. From an order dissolving a temporary injunction, plaintiffs appeal. Affirmed.

Ramsey & Odell, of Cleburne, for appellants. J. K. Russell, O. T. Plummer, and W. E. Myers, all of Cleburne, for appellees.

DUNKLIN, J. W. M. Allen and wife executed a deed to certain land to the trustees

of school district No. 31 in Johnson county, and their successors, containing covenants of general warranty of title, but with the following stipulation contained in the deed, to wit: "Conditioned that. when the above-described land ceases to be used as school purposes, the same shall revert to us." The school trustees procured the erection of a schoolhouse upon the land which was thereafter used for school purposes. Later, J. A. Franks, W. W. Wilson, and J. H. Yarbrough, successors to the former trustees to whom the deed was executed, decided to abandon the land upon which the house was originally built, to relinquish any further claim to that land, and to move the building to another location which had been selected by them for that purpose. W. M. Allen and wife instituted this suit to enjoin the removal, alleging that the building erected upon the land was a part of the realty; that the land had been abandoned by the trustees; and that by reason thereof the building, as well as the land, had reverted to them. A temporary writ of injunction was granted, but later was dissolved, and from the order of dissolution this appeal has been prosecuted by Allen and wife.

Appellant has cited many authorities, such as Brown v. Roland, 92 Tex. 54, 45 S. W. 795, Hutchins v. Masterson, 46 Tex. 551, 26 Am. Rep. 286, and Jones v. Bull, 85 Tex. 136, 19 S. W. 1031, announcing the general rule that a house erected upon land becomes a part of the freehold, in the absence of any intention by the parties erecting it that the same shall not become permanently annexed to the land. The evidence shows that the money with which the building was erected consisted solely of contributions by the citizens of that community. Upon the hearing of appellee's motion to dissolve the writ, many affidavits were introduced of persons who contributed to the building fund. Allen was one of those contributors, and he and many others testified that the contributions were made with the distinct understanding with the trustees that the building was to remain upon the land permanently. Some of the same persons, including Allen and wife, testified that there was a further understanding with the trustees that the building should also be used as a place for public worship, as well as a schoolhouse. Two of the trustees who were acting as such at the time of the execution of the deed also testified that it was their intention at the time of the erection of the building that the same should remain upon the land permanently, while another trustee testified that it was his understanding and intention that the building should remain upon the land so long only as the trustees of the district might desire, and that they would have the right to remove the same to any other location whenever they thought it was necessary to the best interests of the school district to do so. The

present trustees also testified that it was not the intention of the former trustees at the time the building was erected that the same should remain a permanent fixture upon the land, and that the present trustees now deemed it advisable to consolidate the district with another district and to move the house upon another location for the convenience of all the patrons of the school. They further testified that, while they made no further claim to the land upon which the building had been erected, they had never abandoned the building and had no intention of doing so. Other witnesses testified that the house was not built for church purposes at all, but strictly for school purposes, and that the use of the same as a church was an afterthought.

Following are articles of our Revised Statutes:

"Art. 2822. The trustees of school districts provided for in the preceding articles of this chapter, and their, successors in office, shall be a body politic and corporate in law, and shall be known by and under the title and name of district trustees of district number ———, and county of ———, state of Texas; and as such may contract and be contracted with, sue and be sued, plead or be impleaded, in any court of this state of proper jurisdiction, and may receive any gift, grant, donation or devise made for the use of the public schools of the district. All reports and other official papers shall be headed with the number of district and name of county."

"Art. 2844. The trustees of a school district shall contract for the erection of the buildings and superintend the construction of the same; and the county superintendent shall draw his warrant or warrants upon the school fund so appropriated only upon the accounts first approved by them.

"Art. 2845. No mechanic, contractor, materialman, or other person, can contract for, or in any other manner have or acquire, any lien upon the house so erected or the land upon which the same is situated; and all contracts with such parties shall expressly stipulate for a waiver of such lien."

"Art. 2847. All schoolhouses erected, grounds purchased or leased for a school district, and all other property belonging thereto, shall be under the control of the district trustees of such district."

"Art. 2849. All conveyances, devises and bequests of property for the benefit of the public schools made by any one for any county, city or town, or district, shall, when not otherwise directed by the grantor or devisor, vest said property in the county judge of the county, or the board of school trustees of the city or town, or the trustees of the school district, or their successors in office, as the trustees for those to be benefited thereby, and the same, when not otherwise directed, shall be administered by said offi-

cers under such rules as may be established by the state superintendent."

When the funds were donated for the construction of the building, the title thereto passed to the trustees, and the building erected with such funds became subject to the provisions of the statutes above quoted. When the contributions were made for the erection of the building, persons making such contributions must be held to a knowledge of the statutory provisions giving absolute control of the building to the trustees and prohibiting the fixing of a lien of any character upon the building. If they could control the location of the building and prohibit its removal, then they could set aside article 2847, which expressly provides that all schoolhouses shall be under the control of the district trustees. If no lien of any character could be placed upon the house, as provided by article 2845, then for a more cogent reason parties donating contributions to be used in the construction of the building would have no right to claim a forfeiture of title to the building, when the ground upon which it is located is abandoned, because of their understanding that at the time they made the donations the building was to remain upon its original location. See Rhodes v. Maret, 112 S. W. 433.

We are of the opinion that the judgment was correct, and it is affirmed.

## On Motion for Rehearing.

Appellants insist that we were in error in holding that the schoolhouse did not become a part of the freehold and that the title thereto did not revert to them when the land upon which the building was erected was abandoned for school purposes. In other words, it is insisted that as appellees neither alleged in their answer to plaintiffs' petition, nor in their motion to dissolve the injunction, that it was not the intention of the trustees at the time the house was erected that the same should become affixed to the land as a part of the freehold, the general rule recognized in the original opinion that, in the absence of such intention, the house does become a part of the realty, would apply. No contention is made that it was one of the considerations for the conveyance by appellants of the land upon which the building was erected that the building should become a part of the realty and revert to them when the land should cease to be used for school purposes. Hence, if appellants are entitled to the schoolhouse erected thereon, such right is solely by virtue of the rule of law noted above. If, at the time of the erection of the house, the trustees could make it a part of the realty by their intention to make it a permanent improvement upon the land, or by erecting the same without forming any intention at the time that they or their successors in office might remove it from the land in the event of a decision to abandon the land for school purposes, then they could control the title to the house indefinitely. Under express provision of the statutes title to the house became vested in the trustees and their successors in office as trustees for those to be benefited thereby "under such rules as may be established by the state superintendent." To give appellants' deed the construction insisted upon would, in effect, be to say that the trustees who received the deed would have the authority themselves to vest in appellants title to the schoolhouse without receiving any consideration therefor and would have authority to bind their successors in office to do the same. Clearly, this would not be in the interest of the patrons of the school and thus deprive them of title to school property would be a breach of trust and contrary to public policy. Midland Co. v. Slaughter, 130 S. W. 612; Sanders v. Cauley, 52 Tex. Civ. App. 261, 113 S. W. 560; Jay County v. Taylor, 123 Ind. 148, 23 N. E. 752, 7 L. R. A. 160; Shelden v. Fox, 48 Kan. 356, 29 Pac. 759, 16 L. R. A. 257, and notes; Millikin v. Edgar Co., 142 Ill. 528, 32 N. E. 493, 18 L. R. A. 447, and decisions there cited. In Jay County v. Taylor, supra, it was held that a contract by a board of county commissioners employing a legal adviser for a period of three years beginning three months subsequent to the expiration of the term of office of one member of the board and extending beyond the terms of office of all the members of the board was against public policy and void, and in that case the following language is used: "In Craft v. McConoughy, 79 Ill. 346 [22 Am. Rep. 171], the Supreme Court of Illinois said: 'Whatever is injurious to the interest of the public is void, on the ground of public policy.' This language is quoted and approved in the recent case of People v. Chicago Gas Trust Co. [130 Ill. 268, 22 N. E. 798], decided by the same court in a learned and exhaustive opinion. In Wiley v. Baumgardner, 97 Ind. 66 [49 Am. Rep. 427] whatever is injurious to public interest is recognized as contrary to public policy. It is evident that the contract involved in this litigation is of that character. It ties the hands of the board of commissioners, and is prejudicial to the free exercise of its power and functions for the public good. In West Virginia Transp. Co. v. Ohio River Pipe Line Co., 22 W. Va. 600, 46 Am. Rep. 527, the court says: 'The common law will not permit individuals to oblige themselves by contract either to do or not to do anything, when the thing to be done or omitted is in any degree clearly injurious to the public'— citing Chappel v. Brockway, 21 Wend. [N. Y.] 159. See People v. Chicago Gas Trust Co., supra."

Certainly it was not within the spirit or intention of the statute that those who were beneficially interested in the building could be deprived of title thereto without receiv-

ing any consideration therefor by any arbitrary act of the trustees who erected it, when the purpose of such act was not to subserve any interest of the beneficiaries.

The motion for rehearing is overruled.