DICKENSON et al. v. BOARD OF TRUSTEES OF CHICO INDEPENDENT SCHOOL DIST. et al.

No. 14853.

Court of Civil Appeals of Texas. Fort Worth.

June 27, 1947.

Rehearing Denied Sept. 19, 1947.

Donald & Donald and Joe H. Cleveland, all of Bowie, for appellants.

C. T. Gettys, of Decatur, for appellees.

SPEER, Justice.

Plaintiffs, Minnie Lee Dickenson, a widow, joined by her only children and their descendants, all adults, instituted this suit against Hardy Watson, Ira Morgan and six other persons in their capacities as trustees of the Chico Independent School District, V. E. Baldridge, Chairman, and three others alleged to constitute the County Board of School Trustees, in statutory form of trespass to try title to recover a described four acres of land in Wise County, Texas.

Defendants answered by general denial, not guilty and special pleas some of which were substantially, that in 1921 T. A. Dickenson (now deceased) and his wife Minnie Lee Dickenson conveyed the four acres of land in controversy for school purposes to the trustees of the Red Willow Common School District No. 113 of Wise County, a Common School District. (For convenience we shall refer to Red Willow Common School District No. 113 as "the District".) That shortly after acquiring the land, the District caused bonds to be issued to raise funds with which to build a school house, teacherage and certain necessary out-buildings. That the bonds were sold, funds received, and the buildings were constructed. That thereafter taxes were levied against property in the District to pay the bonds, and that taxes have been collected up to the date of the suit and applied thereon. That a common school has been maintained on said premises at all times up to a period during World War II, when salaries of teachers and other necessary expenses made it expedient to consolidate the District with Chico Independent School District; that this was done in 1946. That the buildings on the land in controversy having been constructed at the expense of the District, the trustees decided to either sell the buildings or tear them down and

salvage the materials with which to raise funds to construct other buildings to be devoted to further public school uses, to the end that the District could continue to have the benefits of said school properties. That plaintiffs forbade the trustees doing either and claimed the buildings had reverted to them with the land under the terms of the deed of conveyance.

There are further allegations in the answer to the effect that the purported forfeiture or reversionary clause in the deed of conveyance, would not reinvest plaintiffs with the title to the land and more especially the improvements placed there by the District. There are allegations made by defendants to the effect that the reversionary clause in the deed was placed therein after the trustees of the District had purchased the property and paid its full value in cash or its equivalent and that the trustees had no knowledge of such purported reversionary clause. We shall notice this phase of the case later on in this opinion.

Trial was to the court without a jury. Judgment was entered for plaintiffs for the land without the improvements, and the improvements were awarded to defendants. Both plaintiffs and defendants excepted to the judgment; plaintiffs gave notice of and have perfected this appeal; defendants file cross assignments as to that part of the judgment awarding the land to plaintiffs.

As we construe the record and the contentions of the parties, the controlling issue involved is, did the buildings on this school property revert to the heirs of the grantors along with the land, under the provisions of the deed?

The deed executed by the Dickensons in 1921, involved here, is in regular printed form naming the trustees as grantees and the consideration clause reads: "For and in consideration of the sum of One Hundred and Fifty Dollars to us paid and secured to be paid by J. C. Watson, I. H. Martin, A. H. Morris, D. Moser, L. E. Brooks, and W. B. Browning, Trustees of Red-Willow School District No. 113 of Wise County, Texas, and their successors in office, with the exception hereinafter stated, as follows One Hundred and Fifty

($150.00) Dollars cash in hand the receipt of which is hereby acknowledged. The further consideration and condition is that should the property hereinafter described ceased to be used for School purposes upon the premises herein conveyed, such condition to be binding upon and to be observed by the grantees herein, as well as their successors in office, and in case of any violation or non-observance of the above condition, then this deed shall null and void, and the said premises shall then and there and wholly and absolutely revert to the grantor herein, his heirs, executors, administrators, privies or assigns."

The habendum and general warranty clauses are in regular form and in each, names "J. C. Watson et al. Trustees of the Red-Willow School District No. 113."

Plaintiffs (as appellants) rely upon four points of error. They are substantially: The court erred (1) in awarding to defendants the improvements because the evidence conclusively shows that the buildings were attached to and became a part of the realty; (2) in holding that the title to the improvements was not governed by the general rules regarding permanent fixtures on land; (3) in excepting the improvements from the reverter clause in the deed upon the theory that such clause did not include the improvements, because the provision of the deed was the only contract between the grantors and grantees and that instrument provided for the reversion of the premises so conveyed. And (4) in admitting testimony tending to show that the reverter clause was inserted in the deed by grantors without the knowledge and consent of grantees.

First three points assigned relate to the same subject matter and may be discussed together.

The testimony shows that the trustees acquired such title as they had to the land under the deed from the Dickensons in 1921. That at the time of the purchase, the trustees paid $150 in cash and that amount was slightly more than the actual market value of the land at the time. That the land was unimproved, except that it may have been cultivated. We have already quoted the reversionary clause in the deed

upon which plaintiffs rely for the recovery of the four acres of land and the improvements thereon; the improvements consist of a brick schoolhouse, a frame five-room teacherage and some out-houses and sheds. Indisputably school was regularly conducted in the schoolhouse and the teacherage was occupied by the teacher of the school at all times up to "about three or maybe four years" before the date of this trial in November 1946; that during the war the scholastic population diminished until there were not enough pupils to justify continuing the school; that a school bus from Chico Independent School District passed the schoolhouse every day; that the County Superintendent and the trustees recommended sending the pupils to that school; that at that time the trustees contemplated that later the number of pupils would again justify resumption of the school, but that instead of increasing they continued to diminish, and in the summer of 1946 an election was held consolidating the District with Chico Independent School District. That the teacherage and the out-buildings constructed by the trustees on the land were built with materials salvaged from old school buildings previously in other districts, which had then been consolidated with the Red Willow Common School District; that practically all labor thereon was contributed and such funds as were required came from moneys left in the treasury after school terms had ended. And the school building was erected with funds acquired by the sale of bonds. That after becoming convinced the District could no longer maintain a school, the trustees decided it expedient to either sell the improvements as they stood or to tear them down, salvage what material they could and sell it and use the money for the benefit of the Chico and old Districts; that the trustees were advised by the County and State Superintendents they could do this; that they advised Mrs. Dickenson of their intentions and that she could have the land back, but she declined to agree to the plan and filed this suit.

We think it proper just here, to refer to certain articles of our present Vernon's Annoted Civil Statutes pertaining to Common School Districts, such as the one under consideration.

By Article 2748 the board of trustees is made a body politic known as district trustees of the district in which they serve; that the board may contract and be contracted with, and sue or be sued in any court of competent jurisdiction.

By Article 2752, the trustees are authorized to contract for the erection of buildings and superintend the construction of same. They shall approve accounts against the district and the County Superintendent will draw his warrant against the funds properly appropriated for such cause. No mechanic, contractor, materialman or other person can contract for, or in any other manner have or acquire any lien upon the house so erected or the land upon which it is situated.

Article 2754 reads: "All school houses erected, grounds purchased or leased for a school district, and all other property belonging thereto, shall be under the control of the district trustees of such district."

Article 2756 provides substantially, that all conveyances of property for the benefit of the public schools of any district, when not otherwise directed by the grantor, vest said property in the trustees of said district, or their successors in office, as the trustees for those to be benefitted thereby.

■ From the cited statutory provisions it must be concluded that the trustees of a school district are made the representatives of their respective districts for the transaction of the business of the district; in this capacity, they may contract for the erection of suitable buildings and equipment but may not permit any person to acquire a lien on such structures by which the property could be lost to the district; that the title to all property so acquired vests in them in trust for the use and benefit of the residents of the district to be benefitted thereby. That they as trustees have the exclusive management and control of the property, regardless of whether it is acquired by gift or purchase for value. Other provisions of our laws authorize them to locate the schoolhouse in such place as they may deem to the best

interest of the patrons of the school, and to change locations of the schoolhouse when, in their judgment, it is to the best interest of the district.

Our laws relating to our educational system provide for the levy and collection of taxes against the property in a district to support the schools therein and for the issuance of bonds and taxation to pay them, as a means of acquiring funds with which to erect suitable buildings in which to conduct the school in the district. The trustees receive all such tax money for maintenance and funds for construction of buildings in trust for the benefit of the district where the property so taxed, is located. Being a trust fund, the trustees have no legal right to use the tax money or the proceeds of the sale of bonds, for any purpose other than that for which the tax was levied and collected. They may not even bear the expense, from those funds, of teaching pupils residing in another district; but in such cases must have funds belonging to the district from which the additional scholastics come, allocated to the district to which they are transferred. Love v. City of Dallas, 120 Tex. 351, 40 S.W. 2d 20.

Defendants' pleadings and the undisputed testimony show that the trustees of the District at the time they received the deed of conveyance and at all times thereafter were cognizant of their official duty and the trust they owed to the residents of the District; that they expected to erect suitable buildings on the lands for conducting a public school and that the title thereto was vested in them in trust for the District; that they sought to perform those duties and to receive the proceeds arising from a sale or salvage of the buildings to be used by them for the benefit of the District. No contention is made by plaintiffs that the reversionary clause in the deed specifically provides that the buildings on the land should become a part of the realty and revert to them with the land. They do contend, however, that under the established rules generally announced, that permanent fixtures, when attached, become a part of the land as a matter of law.

Plaintiffs cite and rely upon many authorities holding, that as a general rule, permanent improvements placed on land become a part of the realty, and argue that the reversionary clause in the deed under consideration should be construed as laid down in those cases. A school district acting under those who hold its property in trust does not have the same authority in all respects, given to individuals, but must act within the prescribed powers given by law under our statutes and the construction given by the courts. If the general rule contended for by plaintiffs was applicable to common school districts, and the trustees should acquire, as they did in this case, land upon which to erect a schoolhouse, containing a reversionary clause in case it ceased to be used for school purposes, they could never remove the improvements to another part of the district, it matters not how imperative it might be that it be done to better serve the residents of the district. By the application of such a rule, the grantors in such a deed, and not the trustees, could forever thereafter control the location of the schoolhouse. This is contrary to our common school educational system. Plaintiffs cite some cases from other jurisdictions which tend to support their contention. We note however that in still other states the authorities are badly divided on the subject. 56 C. J. 447, Sect. 497.

We think the rules announced in Allen et. al. v. Franks et. al. Tex.Civ.App., 166 S.W. 384, 385, writ refused, are controlling here. In the cited case, the trustees acquired a tract of land for school purposes; the conveyance contained this provision: "Conditioned that when the above-described land ceases to be used as school purposes, the same shall revert to us." Buildings were erected on the land and paid for by donations from persons in the district. The trustees deemed it advisable to change the location of the school to better accommodate the patrons (perhaps to another place within the same district, but this is not clear) and let the land revert to the grantors under the terms of the deed. Grantors enjoined the trustees from removing the improvements under a claim that they had become a part of the realty and would revert to them with the land. It was held that under the authorities

there cited and the facts found, that the improvements remained the property of the district and were subject to the control of the trustees; that the general rule in regard to permanent improvements becoming a part of the realty did not apply in such cases. The nature of the buildings sought to be moved in the case cited is not shown; aside from this we see no material difference in the facts of that and this case.

In their briefs plaintiffs seek to draw distinctions in the Allen v. Franks case supra, and the instant one, but rely for recovery upon the theory that such improvements as those involved here became a part of the realty and reverted with the land. They frankly admit that if the buildings on this land could be moved to another part of the District and used for school purposes, they could not prevent it. In so far as the title to the improvements is concerned, certainly if it be conceded that the trustees could move them to another location for use by the district and plaintiffs could not have prevented it, they would not revert with the land to plaintiffs. This seems to be the established rule announced in Allen vs. Franks, supra; such holding was based upon the theory that the improvements belonged to the District and were at all times under the control and disposition by the trustees. In the instant case, the trustees, in the exercise of their discretion, decided to abandon the land for school purposes, and to either sell the improvements as they stood or tear them down, salvage and dispose of the material and use the proceeds for the benefit of the District. Their contemplated acts were based upon the theory that the District owned the improvements and that they as its trustees could control and dispose of them for the use and benefit of the District. We can see no material difference in the acts involved in the cited case and those involved here; in either event the improvements would not revert to plaintiffs with the land.

There is no evidence, either in the deed or from any other source, that the intentions of the parties were that any improvements placed on the land should become a part of the realty and should revert with the land in case of abandonment for school purposes. Such intention will not be read into the contract, to strengthen plaintiffs' claim of forfeiture. It is elemental that our courts are averse to forfeitures, and will avoid them unless no other reasonable construction can be placed upon the contract.

The deed of 1921 carried a reverter clause by the terms of which defendants knew if the contingencies therein happened the land would go back to grantors. In cases where land is leased of course it is more definite as to when the land will revert to the possession of the lessor, but the intention of the parties referable to improvements placed on the leased premises, is not essentially different in those instances from such as we have in the case before us. In Eckstine v. Webb Walker Jewelry Co., Tex.Civ.App., 178 S.W.2d 532, writ refused, want of merit, this court discussed and collated the authorities on the issue of expressed and implied intentions of the parties relating to the removal of improvements on the land. To some extent the rule there announced is applicable to this case.

The established laws as they exist, concerning the reluctance with which courts will enforce forfeitures, and that announced in Allen v. Franks, supra, Tex. Civ.App., 166 S.W. 384, all of which were effective at the date of the 1921 deed to the Trustees in this case, will be read into and become a part of all contracts made in such matters, whether specifically mentioned or not. 10 Tex. Jur. 316, Sect. 182. Under the facts detailed and the authorities cited the first three points of error will be overruled.

Fourth point of error complains of the admission of testimony offered by defendants to the effect that the reversionary clause was wrongfully inserted in the deed. The contention under this point is said to be because of lack of proper pleadings, and because it tended to vary the terms of the written instrument.

It is unnecessary for us to pass upon the abstract proposition of law and procedure thus raised, for the reason, the case was

tried to the court who, having heard it all, declined to give credence to the testimony complained of but observed the provision in the deed and awarded the land to plaintiffs.

 Defendants filed a cross point of error to the judgment wherein the land was awarded to plaintiffs under the reverter clause in the deed. It is argued that the provision in the deed relied upon by plaintiffs was incomplete, not plain and specific in meaning, and that such as it is, was inserted in the deed by grantors after a contract of sale had been made for payment of $150 cash, the full value of the land, and that defendants had no knowledge of the existence of such provision in the deed. Obviously the trial court took no cognizance of the contention of the fraud perpetrated upon them by the grantors in having the provision inserted in the deed. By the same token, the court construed the reverter clause in the deed as having the effect to entitle plaintiffs to a recovery of the land in case of its abandonment for school purposes. The clause, so construed by the court, is not all that could be desired for clarity, to effectuate the purposes for which it was written but we think it reasonably and fairly evinces the declared intention of the parties that if the grounds ceased to be used for school purposes the premises should "then and there and wholly and absolutely revert to the grantors, *his* heirs, executors, . * * * " etc.

 Plaintiffs (appellants in this court) have filed a motion to strike defendants' (appellees') brief upon grounds of violating the rules of briefing, because of frequent repetitions and statements not borne out by the record which, it is claimed, are calculated to prejudice the minds of this court against plaintiffs. We have considered the briefs of all parties and endeavored to avoid the danger against which we are warned by plaintiffs and have concluded that the motion to strike should be overruled.

For the reasons stated in this opinion, we hold that the judgment of the trial court is correct, and therefore overrule all points of error and the cross point of error mentioned. It is our order that the judgment be and it is affirmed.