## DUD SANDERS ET AL. v. JIM CAULEY ET AL.

### Decided November 7, 1908.

**1.—Equity Jurisdiction—Injunction.**

A court of equity never aids in the commission of a wrong, nor will it lend its aid in the protection or preservation of an unjust advantage wrongfully obtained. Whatever be the nature of the plaintiff's claim and of the relief

which he seeks, if his claim grows out of, or depends upon, or is inseparably connected with his own prior fraud or unconscionable conduct, a court of equity will in general deny him any relief, but will leave him to whatever remedies and defenses he may have at law.

### 2.—School Property—Dedication—Evidence.

The owner of a tract of land verbally donated it to a school community to be used for school, religious and cemetery purposes; the citizens of the community by voluntary contributions built a house thereon suitable for school and church purposes; on several occasions thereafter the donor offered to execute a deed to the lot if the donees would have the deed prepared; this was never done, but for twenty-five years the lot, with the knowledge and acquiescence of the donor, was used and controlled for school purposes. Held, that these facts constituted a dedication of the property to the school community for school purposes.

### 3.—Injunction—Trespass upon Realty.

Parties who had wrongfully and unlawfully moved a school building from the land which had been dedicated to its use, onto land owned by them, and so attempted to convert the same, are not entitled to a writ of injunction to prevent the lawful owners of the house from repossessing themselves of the house and removing it to the original lot.

Appeal from the District Court of Johnson County. Tried below before Hon. O. L. Lockett.

*Davis & Davis*, for appellants.

*Poindexter & Padleford* and *J. M. Moore*, for appellees.

TALBOT, ASSOCIATE JUSTICE.—This suit was instituted by appellants to enjoin appellees from removing a house from land alleged to be owned by appellants. A temporary writ of injunction was granted, and, upon motion of appellees was, on the 12th day of September, 1908, dissolved. From this judgment appellants have appealed.

The grounds of the motion are: (1) that "the bill or petition is void of equity and shows no ground for the relief sought, for the reasons appearing in defendants' answer herewith filed and here referred to and made a part hereof;" (2) that "all the material allegations contained in plaintiffs' petition are denied and traversed by defendants in their sworn answer herewith filed and made a part hereof." In support of and against the motion to dissolve, in addition to the sworn pleadings, numerous affidavits were filed by the respective parties, and from these affidavits and pleadings the following facts may be adduced.

About thirty years prior to the institution of this suit O. P. Arnold gave and dedicated five acres of land situated in the Hopewell public school community or district in Johnson County, Texas, to be used for school, religious and cemetery purposes. No deed was ever made conveying said land, but shortly after Arnold donated the land for said purposes the resident citizens of said community, by voluntary contributions and subscription, erected thereon a house 24 by 18 feet, which was thereafter used for school purposes, and sometimes church purposes, until sometime during the year 1907. For twenty-five years or more before the institution of this suit the said house was used for school purposes and controlled by the trustees of the said Hopewell public school district,

and was known and recognized during that time as public school property of said district. For said number of years the said O. P. Arnold, who died before this suit was brought, set up no claim to said property, but acquiesced in the use being made of it, and recognized it at all times as public school property, and repeatedly offered to convey it to the school trustees, as such property, if they would prepare and present to him a deed to that effect. During the year 1907 the boundaries of the said public school district were extended, and the school patrons of said district thereafter met in a mass meeting, and by a majority vote agreed to move said school house off the said school and cemetery lot donated by O. P. Arnold, to a more desirable point to them in said school district, the plaintiffs voting with the minority to keep said house on said school and cemetery lot. It is alleged by appellees, and proof in support thereof by affidavits was introduced by them, to the effect that, by the action thus taken at the mass meeting of the patrons, a controversy arose about the moving of said school house, and that by common consent it was agreed that said house should remain where it was during the year 1907, and until new school trustees were elected; that thereafter the plaintiffs, appellants in this court, or a portion of them, of their own motion and in violation of the agreement that said school house should remain on the school and cemetery tract of land, moved said house across the line of said five acres and on to the small piece of land described in plaintiff's petition, containing only about one-fourth of an acre.

It is alleged by plaintiffs in a supplemental petition, and evidence by affidavits in support thereof was offered, that the house in question and the five acres of land upon which it was originally ·built were not built for and dedicated to public school purposes, and was not turned over to the trustees of said public school district to be controlled by them, but that said land was dedicated to cemetery purposes, and that the house in question was built by public donations and subscriptions, to be used for holding religious services in, and burial services, and to teach public or private school in, as the community might desire. It is conceded by plaintiffs in their said pleading and in argument, however, that said house had been used for school purposes by the school district, as well as for the other purposes mentioned, since it was built, about twenty-five years, and that notwithstanding the trustees of said district did not have the exclusive control of said house, yet they did have the right to have the public school of said district taught therein. Plaintiffs do not deny, but admit, as we understand, that they removed said house from the five-acre tract of land and placed it on the land now claimed by them; but they alleged, and offered evidence in support of such allegations, that they had not agreed that the house should remain on said five-acre tract; that they obtained the consent of two of the trustees of said school district and the consent of three of the six surviving children of the said O. P. Arnold, to move said house. The instrument by which the plaintiffs acquired the one-fourth acre of land upon which they placed the school house was attached to and made a part of their petition. This instrument conveyed said tract of land to plaintiffs Sanders and Teeters in trust for their use and the use of the trustees of the Hopewell school district and a minority of the patrons of the school, and provided that

"said property, land and all improvements placed thereon shall be used, maintained and perpetuated as a school house and for such public gatherings of the community and others as said beneficiaries shall provide for, and for public worship of God, and for conducting of funeral services, all these to be conducted at said place only, it being hereby expressly agreed by and between the grantor herein, said trustees and their successors, and the above-named beneficiaries of this trust, that any house or improvements placed by said beneficiaries on said land is their own property, and upon the unanimous vote of all of said beneficiaries for such removal, may be removed therefrom at any time upon and to said five-acre cemetery lot, but to no other place, and by authority of no other persons."

Appellants contend that by their act in moving the house on to the land deeded to them by Shellhorse and wife the same became a fixture, a part of their land, and that they may justly invoke the aid of a court of equity to restrain appellees from invading their premises and retaking said house. It is well said in argument by counsel for appellees that a court of equity never aids in the commission of a wrong, nor will it lend its aid in the protection or preservation of an unjust advantage wrongfully obtained. It is a fundamental principle of equity jurisprudence that "he who comes into a court of equity must come with clean hands." Mr. Pomeroy says: "Whatever may be the strictly accurate theory concerning the nature of equitable interference, the principle was established from the earliest days that, while the Court of Chancery could interpose and compel a defendant to comply with the dictates of conscience and good faith with regard to matters outside of the strict rules of the law, or even in contradiction to those rules, while it could act upon the conscience of a defendant and force him to do right and justice, it would never thus interfere on behalf of a plaintiff whose own conduct in connection with the same matter or transaction had been unconscientious or unjust, or marked by a want of good faith, or had violated any of the principles of equity and righteous dealing which it is the purpose of the jurisdiction to sustain." Pomeroy Eq. Jur. (3d ed.), sec. 398. The principle does not, of course, apply to every unconscientious, inequitable or wrongful act on the part of the plaintiff; it will be confined in its operation to misconduct connected with the matter in litigation "so that it has in some measure affected the equitable relations subsisting between the parties and arising out of the transaction." Pom. Eq. Jur. (3d ed.), sec. 399. Many illustrations of the principle are given in the books, one of the most familiar being cases where the plaintiff's claim is affected by his own fraud. So that it is said that whatever be the nature of the plaintiff's claim and of the relief which he seeks, if his claim grows out of or depends upon, or is inseparably connected with, his own prior fraud, a court of equity will in general deny him any relief, and will leave him to whatever remedies and defenses at law he may have. Pom. Eq. Jur. (3d ed.), sec. 401, and cases cited in note. In such cases a court of equity will refuse all *affirmative* relief. But it is not alone fraud which will prevent a litigant from obtaining relief in a court of equity: "Any really unconscientious conduct, connected with the controversy to which he is a party, will re-

pel him from the forum whose very foundation is good conscience."
Pom. Eq. Jur. (3d. ed.), sec. 404.

We think the conduct of appellees in removing the house on to their
land in the manner and under the circumstances shown by the undis-
puted evidence brings them within the operation of the equitable prin-
ciples announced, and that the writ of injunction was properly dis-
solved. The house and the five-acre tract of land upon which it origin-
ally stood had become dedicated to the uses to which it was being put
before its removal. The uncontradicted facts show that O. P. Arnold
for about twenty-five years or more before his death not only knew and
acquiesced in the use of said land and house for public school purposes,
but proffered more than once to make title thereto to the school trustees
for such purposes. Such knowledge and acquiescence is also shown by
appellants' pleadings, and the fact that said property may have been used
also for religious and cemetery purposes does not, in our opinion, mate-
rially affect the question of its dedication to school purposes, and neither
the consent of the trustees of the school district nor of O. P. Arnold's
children justified the removal of the house and the placing of it upon land
held by appellants (even though it be in trust for school purposes), un-
der a conveyance or instrument which by its express terms provides that
it may be used for purposes other than those to which it was dedicated
by O. P. Arnold, and that any house or improvements placed on said
land by the beneficiaries named therein is their own property, and
should only be removed from said land by the authority of said bene-
ficiaries. As has been seen, the instrument by which the one-fourth acre
of land upon which the school house was placed by plaintiffs, and from
which they seek to restrain its removal, provides that said land is con-
veyed to the beneficiaries named, among whom are the two trustees of
the Hopewell public school district who consented to the removal of the
school house off the five-acre tract, "and in trust that said property,
land and all improvements placed thereon shall be used . . . as a
school house *and for such public gatherings of the community and others,*
as said beneficiaries shall provide for, and for public worship, etc.," all
these to be conducted at said place only, it being further expressly stipu-
lated that *any house* or improvements placed by said beneficiaries on said
land is their own property, and shall be removed therefrom only by the
unanimous vote of all of said beneficiaries, and then only to and upon
said five-acre cemetery lot adjoining, *and by authority of no other per-
sons.*

The sanction of the two school trustees of the Hopewell public school
district of this unwarranted appropriation of property which had been
dedicated to school purposes for the benefit of all the patrons of the school
of said district could give no validity to the unlawful and wrongful act;
and the participation in such act on the part of said trustees was a viola-
tion of duty, and in legal effect a perversion of the trust which had been
committed to them as school trustees, and constituted such a legal fraud
in relation to the subject matter of this litigation as will prevent them
from entering a court of equity for the relief sought. By their wrong-
ful conduct they have practically confiscated the house which they now
call on a court of equity to assist them in holding. They have sought to
wrest the control of said house from the trustees of the school district

and confer it upon the beneficiaries named in their deed, who are a part, if not all, of the minority patrons of the Hopewell school and who opposed a majority of such patrons in their desire to locate said house at a point in the school district which, at least, appeared to them to be more convenient and accessible for all. They have, by placing said house upon the one-fourth acre tract of land, attempted to make it a part of said land, and thereby, and by the written agreement contained in the deed from Shellhorse, converted said house and endeavored to make it their own. The trustees who became parties to this transaction and unlawful removal of said house from the five-acre tract have thereby abandoned said last-named tract for school purposes and assisted in placing it probably within the power of Arnold's heirs, two of whom, it seems, are beneficiaries in said deed, to not only secure the land by reversion, but also, if it should please the other beneficiaries in said deed to act with them, by moving said house back on the abandoned five-acre tract, acquire the title to and possession of said house. Clearly, it can not be said that under these circumstances the plaintiffs came into court in the prosecution of this suit "with clean hands," and hence we think they are in no position to invoke in a court of equity the relief asked.

This effectually disposes of the appeal and other questions discussed in the briefs, and arguments of counsel need not be noticed.

The judgment of the court below is affirmed.

*Affirmed.*