In re FOWLER'S ESTATE.

, FOWLER v. FOWLER.

No. 8144.

Court of Civil Appeals of Texas. Austin.
Oct. 23, 1935.

Rehearing Denied Nov. 13, 1935.

Annie Justice Swaim and E. H. Swaim, both of Eden, Frank Hartgraves, of Menard, and W. L. Scott, of Fort Worth, for appellant.

James M. Simpson, of Amarillo, and Kerr & Gayer, of San Angelo, for appellee.

BAUGH, Justice.

Appeal is from a judgment of the district court denying probate of the purported holographic will of Alonzo B. Fowler, deceased, heard in that court upon appeal from the order of the county court denying the probate of said instrument. Alonzo B. Fowler died January 6, 1933, leaving an estate valued at $400. On January 23, 1933, J. V. Fowler, a brother of the deceased, made application to be appointed administrator of his estate, alleging that Alonzo B. Fowler had died intestate. On February 6, 1933, he was so appointed and qualified as such. On February 16, 1933, Edward T. Fowler, also a brother of the deceased, made application to probate the instrument here in controversy as the will of Alonzo B. Fowler. This application J. V. Fowler contested, alleging that he had already been appointed and had qualified as administrator of said estate.

Trial was to the court without a jury. In the findings of fact, the trial court found, among other things: (11) That administration was pending in the county court on said estate when the application for probate of the purported will was filed; (12) that such administration was still pending when the trial herein was had; (13) that the proponent, appellant here, had not made any attack on said administration proceedings; and (14) that the proponent failed to show by a preponderance of the evidence that said purported will was written by the deceased or under his direction or that Alonzo B. Fowler was mentally competent to execute a will at the time said instrument was dated. In his

conclusions of law, the ground recited for refusal to admit said instrument to probate was that an administration proceeding was already pending in the county court, and there was no authority for two separate administrations on the same estate in the same court.

█ If the trial court's judgment was predicated upon this conclusion, it was clearly wrong. The evidence showed that J. V. Fowler, at the time he applied for letters of administration upon the estate of Alonzo B. Fowler, wherein he alleged that the deceased died intestate, knew of the existence of said purported will. The mere fact that administration had already been granted could not defeat the subsequent probate of a valid will. To permit that would enable one so disposed, whether in possession of such will or not, by expeditiously and in disregard of such will taking out such administration, to effectually nullify the will. Nor was it necessary in offering it for probate to first have the administration revoked. Revocation of letters of administration should not occur until it is determined whether such will is entitled to probate. If it were, and the court should admit it to probate, such action would in itself in legal effect supersede the administration proceedings, and the executor under the will, or the administrator, where no executor is named, would be entitled to take over the decedent's estate and administer it under the terms of the·will to the exclusion of the administrator theretofore appointed. These matters are effectively covered by the statutes themselves. R. S. arts. 3364, 3355; Vance v. Upson, 64 Tex. 266; Hall v. Davison (Tex.Civ.App.) 176 S.W. 642.

█ We think the finding of the court that appellant failed to show that Alonzo B. Fowler was mentally competent to make a will at the time is contrary to the great preponderance of the evidence. Under the statute, the burden was upon the proponent to show mental capacity at the time. His attending physician testified that the deceased was sane and mentally normal only a day or two before the date of the will in question. Other witnesses testified to like effect. We find no evidence to the contrary. No one testified as to any insane delusions or any acts on the part of the deceased indicating mental incapacity either at the time said purported will was dated or at any time prior thereto, nor do the contents of the will so indicate. On the contrary, the disposition of his meager estate by such will was, under the undisputed facts, but the normal and natural thing for him to do. He devised his small estate, scarcely more than enough to give him a decent burial, to his favorite brother with whom he had been a partner in business for many years; in whose home he was cared for during his last days, and where he died. Not only was the proof sufficient to show mental capacity at the time in question, but such capacity only a few days prior to his death having been definitely established, with no evidence to show that the deceased was ever other than sane, the presumption of his continued sanity would obtain. Billups v. Gallant (Tex.Civ.App.) 37 S.W.(2d) 770; 17 Tex. Jur. § 68, p. 265.

█ The remaining question, that is, whether or not Alonzo B. Fowler was shown to have executed the will in question in his own handwriting, is the only serious issue presented. It appears that this was the principal ground of contest relied upon by contestant, and the case was tried largely, if not wholly, on that issue. The trial was to the court without a jury and a rather wide latitude was permitted by the court in the presentation of that issue. While some of the evidence disclosed by the record. was probably inadmissible, where the trial is to the court, it will be presumed that his judgment is based on competent evidence, if that be sufficient to sustain it, in the absence of a showing that·such judgment was based upon incompetent evidence.

Mrs. Ed T. Fowler testified that at the request of Alonzo B. Fowler on the night of January 4th she took to his bed paper and pen, and remained with him at his request while he propped himself up in bed and wrote said will in her presence; that he instructed her to give it to Ed who was at the supper table; that Ed read it and went with her back into Alonzo's bedroom where Ed suggested that there were other relatives to be considered; that thereupon Alonzo stopped him and declared that such instrument was his will. Both Mrs. Ed Fowler and her eleven year old son who went to the room with her testified positively that the deceased wrote such instrument in their presence. Ed Fowler corroborated them as to what transpired after he wrote it. Their testimony is positive and unequivocal as to facts transpiring in their presence.

The only evidence to the contrary was the opinions of witnesses that the writing offered was not in the handwriting of Alonzo B. Fowler. The deceased's mother and three of his brothers testified that the purported will was not in the handwriting of Alonzo. They were interested parties and all save the mother showed an active animosity towards Ed, the beneficiary in said will, extending over a period of years, some of them going so far as to charge him with felonies. Another brother testified with equal positiveness that the will was in the handwriting of Alonzo. While the credibility of the witnesses, two of whom testified by deposition, was a matter for the trial court, in view of the entire testimony of contestants, their admitted animosity, and obvious prejudice and ill feeling against the proponent, we cannot escape the conclusion that such testimony is shown by the record not to be entitled to full credibility. Disregarding such testimony, there appears the testimony of three bank employees. One refused to testify as to the body of the purported will, and confined his testimony wholly to the signature of the deceased. After being exhibited a proven signature of Alonzo B. Fowler for comparison with that appearing on the instrument offered as a will, his testimony was that if a check bearing the signature appearing on the will were presented to his bank he would not pay it. Nowhere did he testify that Alonzo B. Fowler did not in his opinion write and sign the will. He merely testified that signatures on the two instruments were different.

Another employee of a bank, who had never seen deceased write and did not know his signature, after comparing a proven signature with the will, testified that in his opinion they were not in the same handwriting.

The third witness who had had only limited experience in passing upon signatures testified that he did not think the two signatures exhibited to him, that is, the proven signature of the deceased and that appearing on the will, were written by the same person. He declined to say, however, that if the bank had on file the proven signature of the deceased, and a check were presented bearing the signature shown on the will, he would refuse to cash it.

On the other hand, three witnesses testified for the proponents, two of whom were familiar with the signature of the deceased, and who appear to have been about as well qualified as handwriting experts as those testifying on behalf of the contestants, that in their opinion, after comparing the signature of the will with the admittedly genuine signature of the deceased, they were written by the same person.

Thus it appears that, eliminating the testimony of the interested parties who clearly were prejudiced and harboring no little animus against the proponent, the only evidence contradicting the positive and unequivocal factual testimony of two unimpeached witnesses was the opinion testimony as to handwriting based upon limited comparisons. With regard to this character of testimony, the rule announced in 19 Tex. Jur. § 18, p. 41, is as follows: "When it comes to determining the sufficiency of the evidence to sustain a verdict or judgment, courts are inclined to view the opinions of experts with disfavor and to assign but little value to them in certain classes of cases. This is particularly true when experts testify as to handwriting; in such cases opinions have been said to be weak and generally unsatisfactory."

We think the above rule is peculiarly applicable to the instant case.

In addition, there has been brought up as a part of the record photostatic copies of the will in question and of the exhibits containing the admitted signature of Alonzo B. Fowler. We have therefore had opportunity to carefully examine these copies ourselves. While there is no dissent to the general rule that the trial court or jury are the finders of facts which findings, if supported by competent evidence will not be disturbed on appeal, where, as here, the credibility of witnesses is not involved, and original documents accompany the record, the appellate court is not required to ignore matters factually disclosed thereby. Taking cognizance of such matters on appeal is not in any sense an invasion by the appellate court of the functions of the trial court or jury; but a legitimate method of passing upon the preponderance of the competent evidence. The identical situation here presented was before the Court of Civil Appeals in Re Mateer's Estate, 296 S.W. 907, 908 (writ refused), wherein that court said: "The document admitted as evidence at the trial in the court below, showing the admittedly genuine signatures of Mrs. Mateer referred to, and the instrument purporting to be her will as well were sent to this court and have been

looked to and carefully considered here, with the result there is no doubt in the mind of any member of this court about the instrument in question having been wholly written by the decedent."

We have carefully examined the photostatic copies of the unquestioned handwriting of Alonzo B. Fowler and that in which the will was written, and are clearly of the opinion that the will was written by the deceased. This conclusion, taken in connection with the positive testimony of witnesses that they saw the deceased write the instrument in question, and the uncertainty of the mere opinion evidence to the contrary, has convinced us that the findings and judgment of the trial court are so against the great preponderance of the evidence that we are unwilling to let them stand. The judgment of the trial court will therefore be reversed and the cause remanded for another trial.

Reversed and remanded.