Harryett H. KNOX et al., Appellants,

v.

Betty Knox LONG et vir, Appellees.

No. 6780.

Court of Civil Appeals of Texas.

Texarkana.

March 17, 1955.

Rehearing Denied April 21, 1955.

Dan Moody, Austin, Hurst & Burke, Longview, Fulton, Hancock & McClain, Edwin M. Fulton, Gilmer, for appellants.

Wynne & Wynne, William A. McKenzie, Dallas, Harrington & Harrington, Longview, Grimes & Grimes, Washington, N. C., for appellees.

HALL, Chief Justice.

This cause of action was filed in the District Court of Gregg County on June 7, 1947, by appellees against appellants to try title to numerous tracts and parcels of land located in the East Texas Oil Field, and for the value of certain oil runs from wells located thereon, as well as a house and lot in Dallas. Formerly the case was tried in the district court and appealed to this court. Our opinion is found in 251 S.W.2d 911. Writ of error was granted by the Supreme Court which resulted in a reversal and remand of the judgment of this court, 152 Tex. 291, 257 S.W.2d 289.

On the present trial a severance was had in the court below, leaving only the title to the leasehold estate in Lots 9 and 10 in the Reese Addition to the town of Hawkins, and ¼ of the ⅛ of the royalty in said lots and certain personal property.

Trial was to a jury on special issues and resulted in a verdict favorable to appellees. Motion was made by appellants for judgment non obstante veredicto which was overruled. Appellees made motion for judgment based upon the verdict of the jury which was granted by the trial court and judgment was rendered accordingly.

W. C. Knox and appellant Harryett H. Knox were husband and wife from 1928 until December 1945, the date of his death. No children were born to them. Appellee Betty Knox Long is the only child of W. C. Knox by a former marriage. The present suit is between the heir of W. C. Knox, deceased, namely, his daughter, and his surviving wife, Harryett H. Knox, and her son W. C. Holcombe by a former marriage. It is the contention of appellants: (1) that the property here in controversy, leasehold interests in Lots 9 and 10 in the town of Hawkins, and certain royalty interest therein, were purchased by Harryett H. Knox with her separate funds in October 1940, for the sum of $300; and (2) that the leasehold interests in the lots and royalty interest were assigned to Harryett H. Knox by W. C. Knox on December 21, 1940, and filed for record on June 28, 1948. As said by Justice Williams of this court in the former appeal, Knox v. Long, supra [251 S.W.2d 912]:

"During the period [that Knox and his wife were located in Longview in the East Texas field] the two actively engaged in the oil business, namely, the purchase and sale of minerals and mineral leasehold estates along with the development of leasehold estates into oil-producing properties. At the time of his [W. C. Knox's] death the record title of various mineral and leasehold estates together with other realty acquired subsequent to 1930 stood in the name of Mrs. Knox, his surviving wife, or in the names of her children by a former marriage * *."

The lease to one of the lots in question was taken in the name of Harryett Knox as her separate estate, and the other taken in the name of her son, W. C. Holcombe, which, the testimony shows, was for the purpose of securing a permit to drill a well on each of the lots. This scheme did not materialize and only one well was drilled and completed on the two lots as a unit. Some time thereafter the title to the lot held by W. C. Holcombe was transferred to Mrs. Harryett H. Knox as her separate property.

It is the contention of the appellees that the leasehold and royalty interest in the two lots were purchased with community funds of W. C. and Harryett H. Knox, and therefore were the common property of the community, and that the purported assignment from W. C. Knox to Harryett H. Knox dated December 21, 1940, is a forgery. It is undisputed that the lots were purchased during the marriage of Mr. and Mrs. Knox.

Appellants' *first* claim to the leasehold and royalty interest in the lots is governed by Articles 4614 and 4619, R.C.S., Vernon's Ann.Civ.St. arts. 4614, 4619. Mrs. Knox testified that she purchased the lots with three $100 bills which were her separate funds kept separate and apart by her from all other funds after her marriage to W. C. Knox. She further testified that she did not know where she kept her separate funds, and that she did not even know from where she got the three bills with which she paid for the lots. She repeated in her testimony that she knew she kept them separate. She said she might have kept her separate funds in a "sock." She did have the three $100 bills in her purse the day she paid Preddy, the lessor, for the lots and the royalty interest therein. Appellants also introduced in evidence a sworn pleading by W. C. Knox and Mrs. Knox filed in an injunction proceeding brought by them to prevent a forced sale of an undivided ½ interest in the lots as the property of W. C. Knox to satisfy a judgment theretofore rendered against Knox in favor of Mrs. Mamie Maume for a board bill. In this pleading for a temporary restraining order, Knox, as well as his wife, stated that the property, leasehold and royalty interest in Lots 9 and 10 in the town of Hawkins, was the separate property of Harryett Knox. In response to the above petition the district judge of Gregg County issued a temporary restraining order prohibiting the sale of a ½ interest in the lots and the royalty interest therein to satisfy the Mamie Maume judgment. No further proceeding was had in this case, but it was allowed to remain on the docket until it was finally dismissed by the trial judge at a later date. It was effective, however, to prevent the sale of the interest in the lots. The Mamie Maume judgment has never been satisfied.

There is some testimony that W. C. Knox directed that the lease be drawn in the name of his wife as her separate property. There is also testimony by the pumper or switcher as to statements made by Mr. Knox after the well had come in as a producer, to the effect that he was glad Mrs. Knox had an oil well, and that Knox prepared a board with her name on it and attached it to the derrick showing that the well was hers. There is also testimony to the effect that Mrs. Knox directed her son W. C. Holcombe, an attorney and one of the appellants herein, to draw the leases in the manner and form as they appear here. It is undisputed that W. C. Holcombe drew the leases. Between the year 1918, the date Mrs. Knox' first husband died, to 1928, the date of her marriage to W. C. Knox, Mrs. Knox was engaged in various enterprises in Texas and her testimony is that she earned considerable money during this time; that she had some of her separate earnings after her marriage to Knox. There also appears in the record a written statement by W. C. Knox to the effect that the property belonged to his wife as her separate estate.

As heretofore pointed out, it is appellees' contention that the leasehold estates and the royalty interest to the lots in controversy constitute community property of W. C. Knox and his wife, Mrs. Harryett H. Knox. To support this theory, appellees introduced in evidence a drilling contract entered into by Mr. and Mrs. Knox and one Harry Shulman to drill a well on these two lots. In this contract the leasehold estate was referred to as "our" property in several instances. Copies of income tax returns filed by Knox and his wife were introduced in evidence showing that they filed joint returns, in one of which the oil runs from the well on Lots 9 and 10 are listed. Appellees also introduced an oil payment assignment by Knox and wife to Harry Shulman for the sum of $27,500, payable out of ½ of ⅞ of the oil produced from the well to be drilled on Lots 9 and 10, Hawkins townsite. The concluding part of said oil payment assignment is: "* * * and said Harryett H. Knox and husband, W. C. Knox, do hereby bind the remaining interest owned by them, and themselves and their heirs and assigns to deliver free of all liens, incumbrances and costs to Harry Shulman, his heirs and assigns of the ⅞ of the oil produced, saved and marketed." Other circumstances were

introduced by the parties which tended to substantiate their respective claims.

█ The *second* claim by Mrs. Knox to the leasehold and royalty interest in the lots is based upon a purported assignment from W. C. Knox to Harryett H. Knox, dated December 21, 1940, and filed for record on June 28, 1948, about three years after the death of W. C. Knox. To this assignment appellees filed an affidavit of forgery. This, of course, placed the burden upon appellants to establish the genuineness of said assignment. The original of this assignment is lost, or rather, it was never produced in court. The notary who claims to have taken Knox' acknowledgment to the assignment was present and testified that he did take Knox' acknowledgment. There are other witnesses who testified that they heard Knox discussing the assignment with an attorney. W. C. Holcombe and Mrs. Knox both testified that W. C. Knox executed the instrument. There are circumstances supporting appellees' theory that the assignment was a forgery; namely, certain changes or interlineations appearing in it, the long delay in filing the same for record, the description contained in said assignment, and the failure to present same for comparison with W. C. Knox' genuine signature.

Appellant's 3rd point is:

"W. C. Knox having acknowledged on January 3, 1942, in his sworn petition in cause No. 15,540–B, in the District Court of Gregg County, Texas, 124th Judicial District, styled Harryett H. Knox et vir W. C. Knox vs. Mamie Maume, et al., that the oil and gas leases and mineral interests covering the Hawkins lots were the separate property of his wife, Harryett H. Knox, and that he had no interest whatever therein, it follows, that neither W. C. Knox nor Appellee, Betty Long, who is claiming under him, could afterwards dispute such facts so acknowledged; hence, the trial court erred in not sustaining Appellants' Motion for Judgment Non Obstante Veredicto, and in not rendering judgment for Appellants that Appellees take nothing, and in rendering judgment for Appellees for an undivided one-half interest in said property and in the proceeds therefrom."

█ It is our opinion that point 3 of appellants constitutes the controlling question here. The record is without dispute that Knox joined his wife in cause No. 14,450–B against Mamie Maume and the sheriff of Wood County to prevent the sale of a ½ leasehold and royalty interest in Lots 9 and 10 of the Hawkins townsite addition on the theory that the leasehold interest to Lots 9 and 10 and the royalty interest therein was the separate property of Mrs. Knox, and therefore was not subject to execution to satisfy the judgment of Mrs. Maume against Knox. It was expressly alleged in the plea for the restraining order that the leasehold and royalty interest in the two lots were the separate property of Mrs. Knox. Mrs. Knox and W. C. Knox swore to this pleading, stating that all statements made therein were true and correct. It is undisputed that by reason of the filing of said pleading a temporary restraining order was granted by the district court of Gregg County prohibiting the sale of the interests in Lots 9 and 10 to satisfy the Mamie Maume judgment against W. C. Knox. It is also undisputed that this order of the district court of Gregg County effectively stopped the sale of the alleged undivided ½ interest of W. C. Knox in and to said leasehold and royalty interest and that said judgment has never been paid. In this cause of action the heir of W. C. Knox is asserting a contrary contention from that of her father in the injunction suit and now states and pleads that ½ of said leasehold and royalty interest belonged to her father by virtue of the fact that the leasehold and royalty interest in said lots were community property of Knox and his wife. This is exactly the contrary position taken by her father, W. C. Knox in the injunction suit. Had W. C. Knox survived his wife, Harryett, and this suit had been brought by him against her heirs for ½ interest in said property, we think his action and his

statement in his pleading to prevent the collection of the Mamie Maume judgment by a forced sale of W. C. Knox' ½ interest in said property on the theory that it was his wife's separate property would forever bar him, or as some authorities say, "close the door" against a subsequent contention that the property was community. This for the reason that Knox had gained a valuable right, that is, the temporary restraining order which prevented the collection of the debt against him for his board bill. Appellee Mrs. Long claiming under her father, W. C. Knox, and in privity with him, is also barred in this suit from claiming that the leasehold and royalty interest is community property. Knox v. Long, 152 Tex. 291, 257 S.W.2d 289. We base this holding on the following authorities, the latest of which is Dellerman v. Mangold, 271 S.W.2d 720, 721, writ refused, by the San Antonio Court of Civil Appeals. In that case it is said:

"The Dellermans and the Mangolds, as co-defendants, convinced the court and jury in the 1938 action, that the deed was valid, and obtained a judgment that Rogers take nothing. Rogers, the creditor in 1938, was unable to enforce his judgment against the Dellermans because Mr. Dellerman had already validly conveyed his property to his daughter, Mrs. Mangold."

In this case, Knox and wife had effectively prevented the collection of the Mamie Maume judgment against him by his sworn pleading that the leasehold in the two lots and royalty interest therein was the separate property of his wife, Harryett H. Knox. Quoting further from the Dellerman case, supra, it is said:

"The point in this case is rather shocking. Dellerman gained a judgment in 1938 that he did not own the property, by proving that his deed to his daughter was not made for the purpose of defrauding his creditors. Having defeated his creditors back in 1938, he now urges that he does own the property because the deed to his daughter was executed only as a device to defeat his creditors. All the other points in the case converge around this fact. For Dellerman to set aside his deed to Mrs. Mangold he must prove that it was executed and recorded to defraud his creditors, but when he does that he loses his case under the law. The Supreme Court has closed the door to grantors who shield their property from the just claims of creditors and later seek to recover from their grantee in whom was placed the apparent title. Lott v. Kaiser, 61 Tex. 665, 670. If everything happened that Dellerman claims, he has no enforceable right. This is so far the reasons of public policy, to discourage fraudulent transactions. The courts leave the parties in the position in which they have placed themselves. Davis v. Sittig, 65 Tex. 497.' Hughes v. Hughes, Tex.Com.App., 221 S.W. 970, 972; Markward v. Murrah, 138 Tex. 34, 156 S.W.2d 971, 138 A.L.R. 242; Smith v. Chipley, 118 Tex. 415, 16 S.W.2d 269; Gordon v. Thorp, Tex.Civ.App., 53 S.W. 357; Humble Oil & Refining Co. v. Webb, Tex.Civ. App., 177 S.W.2d 218; Hoeser v. Kraeka, 29 Tex. 450; 37 C.J.S., Fraudulent Conveyances, § 267; 20 Tex.Jur., Fraudulent Conveyances, §§ 94, 100, 103." Hill v. Preston, 119 Tex. 522, 34 S.W.2d 780.

It is said in Hardy v. De Leon, 5 Tex. 211, 212, in an opinion by Justice Wheeler delivered over 100 years ago, that: "If a defendant has acknowledged the title of the plaintiff, he cannot afterwards dispute it."

To permit appellee in this cause to deny the very title her father admitted and relied on in the injunction suit to restrain the sale of the same property would be contrary to public policy of this State. It is our opinion that the trial court erred in not rendering judgment for appellants for the title to the leasehold interest in Lots 9 and 10 and the royalty interest claimed by them in said lots as well as all money held in suspense from the oil runs from said ½ interest in the lots. Appellants' point 3 is sustained. Therefore the judgment of the

trial court is reversed and judgment is here rendered for appellants except as to a ½ interest in the piano, Chrysler automobile, and silver ring.

All other points brought forward by appellants have been carefully considered and are respectfully overruled.

Reversed and rendered in part, and affirmed in part.

DAVIS, J., did not participate in this cause.

FANNING, Justice.

I concur with the opinion written by Chief Justice HALL in this cause. It is my considered view that appellants' point 3 is controlling and decisive of this appeal. If W. C. Knox were living today, the averments he made under oath in the Mamie Maume injunction suit, to the effect that the leasehold and royalty interests in the Hawkins lots in question were the separate property of his wife, Harryett Knox, and that he, Knox, owned no interest whatsoever therein (which averments were also made by Mrs. Knox and which averments resulted in preventing the property in question from being sold for a board bill owed by Knox to Mamie Maume) would under public policy and the controlling judicial decisions of this State, forever bar him, or as some authorities say "close the door" against a subsequent contention by W. C. Knox that the property in question was community. The recent well-considered opinion written by Justice Pope of the San Antonio Court of Civil Appeals in the case of Dellerman v. Mangold, 271 S.W.2d 720, in which writ of error was recently refused by the Supreme Court, I think is very much in point here, as are the quotations from this case made by Chief Justice HALL in his opinion in this cause. As in the Dellerman v. Mangold case, supra, Knox having defeated his creditor (Mamie Maume for her board bill) if alive would have no enforceable right to contend or maintain that the property in question was community because public policy would

prevent same, and as stated in the Dellerman v. Mangold case, supra, "The courts leave the parties in the position in which they have placed themselves." It is also thought that the following quotations from Hardy v. De Leon, 5 Tex. 212: "If a defendant has acknowledged the title of the plaintiff, he cannot afterwards dispute it", is pertinent to this case. W. C. Knox, if living, therefore would not be permitted by public policy and the courts of this State to change his position to dispute the title he had sworn in the Mamie Maume injunction suit to be in his wife. Mrs. Harryett Knox, who also swore in the Mamie Maume injunction suit that the property in question was her separate property, has never changed her position with reference to this matter.

It is also my further view that the matter presented here does not have the effect of passing title from Knox to his wife, but it does effectively prevent him from prosecuting his right or claim to the title, which claim or right is not an *enforceable right*, by virtue of the prior contrary position taken by Knox in the Mamie Maume injunction suit.

Justice Griffin, in the majority opinion of the Supreme Court of Texas, in Knox v. Long, 152 Tex. 291, 257 S.W.2d 289 (in a previous appeal of the case at bar) on page 297 of said opinion stated: *"Mrs. Long stands in privity with her father, W. C. Knox; * * *"* (Emphasis added.)

Appellee Mrs. Long, standing in privity with her father, W. C. Knox, also is subject to the same bar as her father, and under public policy and the controlling judicial decisions of this State, has no *enforceable right* to contend or maintain that the leasehold and royalty interests in question and the monies held in suspense from the oil runs on such interests, were community property of her father, W. C. Knox. I concur in sustaining appellants' point 3, and concur in reversing and rendering this cause for appellants, except as to that phase of the judgment which was not appealed from which awarded appellee Mrs. Long a ½ interest in a piano, a Chrysler automo-

bile, and a silver ring, which portion of the judgment was affirmed, with which part-affirmance I concur.

I concur in the overruling of appellants' other points and thoroughly agree with Chief Justice HALL'S opinion in every respect.