Bess Jimmerson JONES et al., Appellants,

v.

Jesse W. JIMMERSON et al., Appellees.

No. 6928.

Court of Civil Appeals of Texas.

Texarkana.

April 18, 1957.

Rehearing Denied May 9, 1957.

Gordon R. Wellborn, Rex Houston, James N. Phenix, Henderson, for appellant.

Waldrop, Shaw & Colley, Henderson, for appellee.

CHADICK, Chief Justice.

This is an appeal from a decree in a partition suit. The judgment of the trial court is affirmed. The facts are involved due to previous litigation between the parties but in order to understand the case these prior proceedings must be described in some detail.

On May 4, 1948, Mrs. E. B. Jimmerson, widow of J. H. Jimmerson, and her daughters Bess Jimmerson, Renie Tipps, Era Rousseau, each a single woman, and Linnie Maloney, joined by her husband, and a son, Henry Jimmerson, filed a trespass to try title suit against another daughter, Monnie J. Henderson and husband, C. D.

Henderson, to recover title to 217 acres of land in Rusk County.

Later, a second amended petition was filed but before trial Mrs. E. B. Jimmerson died on December 15, 1948. On September 16, 1949, a third amended petition was filed casting her daughters Bess Jimmerson, Renie Tipps Moyers and her husband, Era Rousseau, Linnie Maloney and her husband as plaintiffs; and as defendants Mrs. Jimmerson's daughter and three living sons, Monnie Henderson and husband, Henry, D. E., and J. W. Jimmerson, and her grandchildren, the heirs of Lester Jimmerson, deceased, Christine Bates and her husband, and Robert, J. D., Naydine, and Duke Jimmerson, and the divorced wife of Lester, Lois Jimmerson. This became plaintiffs' trial pleading and in addition to trespass to try title allegations it stated an action for cancellation of an instrument and will hereafter be referred to as the cancellation suit. Henry Jimmerson conveyed his interest to Bess Jimmerson on January 5, 1949, about three weeks after his mother's death. This third amended petition alleged that J. H. Jimmerson and his wife, Mrs. E. B. Jimmerson, each was deceased and that each died intestate and there was no administration upon either of their estates and no necessity therefor. In the trial one of the plaintiffs so testified.

After trial before a jury, judgment was entered denying recovery to either Henry or Lois Jimmerson and awarding Bess Jimmerson a ⅖ undivided interest, the children of Lester Jimmerson a joint ⅑ undivided interest, and each of the other six children an undivided ⅑ interest in the 217 acres; and establishing that the land was community property and the homestead of J. H. and E. B. Jimmerson, cancelling a deed given by J. H. Jimmerson and E. B. Jimmerson to Monnie Henderson and C. D. Henderson, and removing the same as a cloud upon the title to the land. This judgment was appealed to the Court of Civil Appeals and was there affirmed. It is reported as

Henderson v. Jimmerson, Tex.Civ.App., 234 S.W.2d 710, error refused, N.R.E. The Court of Civil Appeals' opinion noted that it was pled and proved that Mrs. Jimmerson died intestate and that no administration was had upon her estate and that there was no necessity for one. Writ of error was prosecuted to the Supreme Court and the plaintiffs reasserted there the intestacy of Mrs. Jimmerson and the absence of an administration or necessity for one. The Supreme Court refused a writ of error and the judgment of the trial court became final April 2, 1951. After judgment in the cancellation suit, Naydine, J. D. and Duke Jimmerson deeded to Robert Jimmerson all of their interests in the land; likewise Christine and Johnnie Bates conveyed him their interests, less minerals; and D. E. Jimmerson deeded his interest to Jesse W. Jimmerson; and Jesse W. Jimmerson conveyed a ⅖₆ mineral interest to Willard C. Jimmerson.

After the District Court's judgment became final, Bess Jimmerson, still a single woman, filed an application August 20, 1951, to probate the will of Mrs. E. B. Jimmerson. The will was admitted to probate on September 4, 1951, and Bess Jimmerson under the name of Bess Jones, she having during the pendency of the application married and is hereafter referred to as Bess Jimmerson Jones, was appointed administratrix without bond, and on the same date qualifying, and receiving letters testamentary. The will dated May 20, 1948, devised and bequeathed to Bess Jimmerson Jones, Renie Tipps Moyers, Linnie Maloney, Era Rousseau and Henry Jimmerson, "my property, both real, personal and mixed of whatsoever nature, wherever situated, and howsoever acquired, share and share alike, in fee simple."

September 28, 1954, Jesse W. Jimmerson, Willard C. Jimmerson, Monnie Henderson and her husband, C. D. Henderson, Robert Jimmerson, Christine Bates and her husband, as plaintiffs filed this partition suit now on appeal against Bess Jimmerson

Jones, Renie Tipps Moyers, Linnie Maloney, and their respective husbands, Era Rousseau, Henry Jimmerson, Gordon R. Wellborn, and The Texas Company. At the trial all parties conceded the validity of The Texas Company lease, and prior to the trial Gordon R. Wellborn filed a disclaimer and executed a quitclaim deed to Bess Jimmerson Jones so further notice of them is not required in this opinion. The defendants answered by plea in abatement, and pleadings alleging title under Mrs. E. B. Jimmerson's will related back to time of her death, and on June 13, 1955, filed a cross-action in the nature of a bill of review to reform the judgment in the cancellation suit on the grounds of mutual mistake, or newly discovered evidence, or to declare it void ab initio. All parties at the trial treated the property as the community of J. H. and E. B. Jimmerson and concede that the J. H. Jimmerson share passed to the children and grandchildren under the law of descent and distribution. The court carried the plea in abatement along with the trial on the merits and after full hearing entered a judgment for partition awarding interest in conformity with the titles decreed in the cancellation suit and the mesne conveyances of the parties. Appellants objected to such judgment, gave notice of appeal and filed a transcript and statement of facts in this Court. Appellants requested findings of fact and conclusions of law. These were made and filed by the trial court and no objection was made to them.

Appellants have brought forward 22 points of error which they divide into three parts for discussion. The first group, 1–15, relates generally to the asserted error of the District Court in proceeding to judgment and ordering a partition while an independent administration was pending in the County Court. The second group, 16–21, relates to the alleged error of the trial court in not treating the judgment probating the will as relating back to the time of Mrs. E. B. Jimmerson's death, or not reforming the judgment in the cancella-

tion suit because of mutual mistake of the parties or newly discovered evidence, or in failing to declare such decree void for want of jurisdiction of the trial court to hear the cancellation suit. The third, one point, is concerned with the alleged error of the trial court in failing to render judgment before the expiration of the term of court at which the case was tried or the next term thereafter.

■■■ Appellants' first group of points challenging the jurisdiction of the District Court of Rusk County to hear and proceed to judgment in this partition suit because of the pendency of an independent administration under the will of Mrs. E. B. Jimmerson will be considered first. The facts related show that the administration under the will was independent and that it was not closed of record in the County Court of Rusk County, and that probate of the will and letters were granted over three years before this partition suit was filed. The testimony of Henry Jimmerson, hereafter quoted, which is the entire testimony on this subject, shows that there was no active administration in progress nor is there elsewhere in the record any evidence of the necessity therefor.

Henry Jimmerson testified as follows:

"Q. Now, Henry, actually did Mrs. Jimmerson have any property except what was involved in this litigation to amount to anything? A. Oh, she didn't have anything.

"Q. Did she have any other land except what was involved in this litigation? A. No, sir."

It was held in Alexander v. Berkman, Tex.Civ.App., 35 S.W.2d 864, writ refused, that suit might be brought in the district court against an independent executor after the expiration of one year for partition and distribution of a legacy under a will; this case cites Quintana v. Giraud, Tex.Civ. App., 209 S.W. 770, and Jerrard v. McKenzie, 61 Tex. 40, as authority. Such rule is supported by the reasoning in the later

cases of King v. King, Tex.Civ.App., 242 S.W.2d 925, reversed on other grounds, In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and First State Bank of Stratford, Texas v. Roach, 5 Cir., 124 F.2d 325. In these latter cases, it is said that there is a rebuttable presumption growing out of Articles 3509 and 3602, Vernon's Ann.Civ.St. (now in a somewhat changed form, Secs. 298 and 373, V.A.T.S., Texas Probate Code), that an estate is closed one year after an independent administration is granted. The case of Nesbitt v. First National Bank of San Angelo, Tex.Civ.App., 108 S.W.2d 318, no writ history, holds that after one year of an independent administration it may be presumed that an independent executor holds assets of an estate in trust for those entitled thereto. Before enactment of the present probate code, which became effective January 1, 1956, there was no statutory direction for closing an independent administration. This hiatus in the law gives reason and substance to the presumption that an administration is closed after one year. The District Court of Rusk County, as previously indicated, under these authorities would have jurisdiction.

■ There is another independent reason why the District Court would have jurisdiction. The appellees claim as parties, or privies of parties to the cancellation suit that each of the parties in this suit has an undivided title and interest as adjudged and set out in the cancellation suit. The appellants as devisees under their mother's will, on the theory that such devise relates back to the time of their mother's death, claim all of their mother's half interest in the land; their title thus derived conflicts with that conferred by the cancellation suit and would increase the title and quantity of interest owned by each of them. If effect is given to the will in the partition suit each of the appellants will receive a larger share in the land than they will under the cancellation suit judgment and each of the appellees' share and title will be reduced accord-ingly. The question between the parties is not who are heirs, as argued by appellants, but what title each party owns, as a co-tenant with the other.

In Tide Water Oil Co v. Bond, 136 Tex. 127, 148 S.W.2d 193, 194, a mandamus proceeding before the Supreme Court, the Court of Civil Appeals was directed to certify to the Supreme Court whether the proceeding before the Court of Civil Appeals did in fact involve a question concerning title to land. In response to this direction, the Civil Appeals Court answered as follows:

"* * * 'That the plaintiffs and the defendants are co-tenants, is not controverted; however, a controversy having arisen as to the interest or share the parties owned in the property sought to be partitioned, the present suit ensued. The answer of the defendant Company, while admitting the fact of co-tenancy, claimed to own a larger interest or share in the property than was conceded in plaintiffs' petition. * * *'"

In an opinion by the Commission of Appeals such facts were held to present a question of title in these words:

"In the original opinion we said 'that the Court of Civil Appeals' opinion appears to have been based entirely upon its construction of the statute, and not upon a finding that the suit did not in fact involve a question concerning title to the land.' We are now convinced of this, and are of the opinion that the statement above quoted clearly shows that a question of title is involved."

The parties here are in dispute as to the size of the share or the title that each will take in the 217-acre tract. Under the foregoing case it is held that a question of title to land is involved when one co-tenant seeks to enlarge his share at the expense of other co-tenants. The District Court would have exclusive jurisdiction to try such question, Const. Art. 5, Secs. 8, 16, Vernon's Ann.St.;

Art. 1906, subd. 3, V.T.C.S.; Farmers' National Bank v. Daggett, Tex.Com.App., 2 S.W.2d 834.

For both reasons independently it must be held that the District Court of Rusk County had jurisdiction of the partition suit and appellants' Points 1–15 as they relate to this question are respectfully overruled.

From the facts already related, it is known that Mrs. E. B. Jimmerson initiated the cancellation suit and at that time, aside from an equitable interest in the 217 acres of land yet to be determined by a successful prosecution of her suit, she owned no property or estate. On May 20, 1948, she gave a deposition in the cancellation suit in the morning and in the afternoon executed and had witnessed her will. Making the will under such circumstances indicates that the cancellation suit was uppermost in her mind at that time and at the time the next mentioned acts and instructions were given. When she signed the will, she gave her attorney, who drew and was one of the witnesses to it, these instructions as testified to by him:

"She gave me the strictest instructions to keep it in confidence. She had had nine children, five of the children had aided her in the trial of that case, three of the children and the children of one of the deceased children and maybe some of the other deceased children, had not aided her. She told me if she won that case she wanted the children who had helped her get what she was entitled to, but if she didn't she didn't have anything to leave anybody and she didn't want to leave the heartaches. Her instructions were plain and they were implicit, and I tried to follow them."

Henry Jimmerson as a witness testified to his custody of the will and his mother's instructions in the following language:

"Q. You have heard some discussion about a will which has been ad-

mitted to probate as the last will and testament of your mother, when did you first see that instrument? A. My mother gave it to me.

"Q. And did she give you some instructions when she gave it to you? A. That is right.

"Q. Tell this court what those instructions were. A. Well, she gave me an envelope—

\*　\*　\*　\*　\*　\*

"A. She gave me the envelope and told me to keep it and not tell anybody she had any, and told me what it was, and if she died before this—

"Q. Go ahead, if she died, what? A. If she died before this lawsuit was settled for me to keep that thing, and if she won this lawsuit she wanted me to bring it to you and have you to probate it; and if she didn't to burn it up.

"Q. Now, Henry, did you follow the instructions of your mother? A. I did.

"Q. And after the lawsuit was settled in the Supreme Court, did you comply with her instructions then? A. I did.

"Q. During the time that you handled the instrument did you ever violate your mother's instructions? A. Never did.

"Q. Your mother was dead shortly after that and you continued to follow her instructions? A. That is right.

\*　\*　\*　\*　\*　\*

"Q. Do you recall how long she lived after she gave you that will? A. Well, she gave it to me about the last of May sometime, I don't know just when, and she died in December, I believe.

"Q. All right, there has been inquiry as to where the will was kept, can

you tell us about it, please? A. It was up there in the bank in my bank box.

\*　\*　\*　\*　\*　\*

"Q. Did any of your sisters ever ask you the direct question as to whether or not your mother left a will? A. No, sir; if they had, I wouldn't have told them."

These instructions make it absolutely clear that it was Mrs. Jimmerson's purpose to conceal and keep secret her will until there was a successful termination of the cancellation suit, and if the cancellation litigation was not successful that her will be destroyed. The trial court's findings filed herein are that she was successful in her purpose.

These acts and instructions show that it was also her purpose if she was not living at a successful termination of the cancellation suit that her will change the course of title as it would descend under the law of descent and distribution and vest her share of the title in the five children named in her will and defeat the vesting of her title, share and share alike, in all of her children as the law would cast it in the absence of a will.

Two results were produced and naturally flow out of secreting the existence of the will. The first result was to deprive the defendants in the cancellation suit of their right to abate such suit until the will was admitted to probate and her personal representative brought into the case. That they might have abated the suit is supposed by Youngs v. Youngs, Tex.Com.App., 26 S.W. 2d 191; Cocke v. Smith, 142 Tex. 396, 179 S.W.2d 954, at page 956. It is true that this would have been a temporary matter, but it was a legal right of which she deprived them. And depriving them of the right redounded to her advantage and the advantage of those substituted for her in the suit, as will hereafter be discussed.

The second and more important result was to cause those who after her death were substituted for her in the cancellation suit, and prosecuted her claim, to make representations in that suit that were incorrect in matters vital to the suit in their effort to attain the judgment she sought. And as mentioned previously, those prosecuting her suit did by pleading and evidence represent to the court that Mrs. E. B. Jimmerson died intestate and that there was no necessity for an administration, when in truth and in fact she died testate. This representation at variance with the true facts enabled them to proceed with the cancellation suit and the suit resulted in the judgment on the terms they prayed, cancelling the deed to Monnie and C. D. Henderson and otherwise favorable to the plaintiffs and unfavorable to the defendants' contentions.

At the trial of this partition suit the appellees were before the court, insofar as Mrs. E. B. Jimmerson's half interest in the 217 acres was concerned, claiming title as decreed in the cancellation suit judgment. This was a judgment valid on its face rendered by a court whose powers had been invoked by all parties before it and that had jurisdiction of the subject-matter as well as the parties. On the other hand, the defendants in this same action claimed a separate and distinct title to the Mrs. E. B. Jimmerson half interest as devisees under her will. All proceedings in the probate of the will were legal and valid. Thus there were presented at the trial of the partition suit claims of title to the land that were in conflict, yet which had been vested in the parties by final judgments of courts of competent jurisdiction.

The extremely able and diligent counsel representing the parties on both sides of this suit have exhaustively briefed the law applicable to this factual situation. They have not been able to cite a case in this or any other jurisdiction similar on the facts and this Court has discovered none. However, the Court is not without guideposts to follow. There are equitable maxims woven

into the fabric of the jurisprudence of this State and well considered opinions of the courts of this jurisdiction and others, which aid this Court in reaching what is thought to be a correct disposition.

In White v. White, Tex.Com.App., 142 Tex. 499, 179 S.W.2d 503, it was held that a title derived from a will relates back to the time of death of the devisor. But the facts adherent to this case require application of equitable principles, and "positive rules of procedure based in justice and sound public policy." Hubbard v. Beverly, 197 S.C. 476, 15 S.E.2d 740, 742, 35 A.L.R. 1206, 1208, by the Supreme Court of South Carolina, is a case in which the beneficiaries under Beverly's will undertook to cancel a deed by which Beverly had conveyed land to his wife and thereby placed it beyond the operation of his will. The South Carolina court held that his devisees had the same right that he would have had, if living, to cancel the deed and since, if living, he would have been equitably estopped, his devisees were likewise estopped. In that case the court said: "The rights of the respondents, the specific beneficiaries under the Will of E. B. Beverly, insofar as the doctrine of estoppel is concerned must be measured according to the rights of E. B. Beverly himself." The court based the estoppel upon equitable matters because the estoppel arose from conduct not connected with a proceeding in court.

▪ This is only the application of the equitable maxim sometimes expressed, "a right can not arise to any one out of his own wrong." This equitable principal has been approved and given application in this State by the Supreme Court in Humphreys-Mexia Co. v. Arseneaux, 116 Tex. 603, 297 S.W. 225, 53 A.L.R. 1147, and by a Court of Civil Appeals in Sanders v. Cauley, 52 Tex.Civ.App. 261, 113 S.W. 560. Under principles of equitable estoppel, concealing the will and depriving appellees who were defendants in the cancellation suit of a valuable legal right, that is, the right to abate or postpone trial of the cancellation suit until the will was probated, Mrs. Jimmerson, if living, and the appellants now claiming through her are estopped to question or disparage the titles adjudicated in the cancellation suit. Additionally, concealing the will led to and caused appellants to plead and prove Mrs. Jimmerson died intestate in the cancellation suit. She, if living, and the appellants now in her place are judicially estopped to assert the contrary in this lawsuit or claim a title derived through her inconsistent with the title adjudicated in the cancellation suit.

In the case of Knox v. Long, 277 S.W. 2d 951, by the Texarkana Court of Civil Appeals, it was held that the daughter as an heir of the father was in privity with him and that representations be made in the court of a judicial proceeding would estop her from asserting in a different lawsuit a position contrary to that taken by him. The Supreme Court in the same case reported at 291 S.W.2d 292, approved the holding that she was in privity and held that the daughter was judicially estopped to assert a contrary position. Also see Missouri, K & T Ry. Co. of Texas v. Eyer, 96 Tex. 72, 70 S.W. 529.

The appellants, specific devisees under Mrs. E. B. Jimmerson's will, being in privity with her, took her title subject to such defects and infirmities as it had and subject to outstanding equities in others and in their efforts to either reform the judgment of the cancellation suit or assert title under the will, their rights are measured by her rights. Concealing the will as she did, if she was living and attempted to reform the judgment or disregard it she could not prevail because her conduct caused it to be entered. By authority of Knox v. Long, supra, they are bound by her conduct and the representations she caused to be made in the cancellation proceedings. Under the facts stated and the authorities discussed neither mutual mistake of fact nor newly

discovered evidence could arise. On this record what was known to Mrs. E. B. Jimmerson must be considered as being known to the appellants.

This disposition of the case is fortified by other considerations. With respect to mutual mistake; Henry Jimmerson, of course, as seen from the facts stated was never under any misapprehension respecting his mother's testacy. He should have revealed the will's existence. Fidelity to a trust is a virtue worthy of admiration, but when it is placed in the balance against truth and justice, its lustre is tarnished; when silence will cause a harmful disadvantage to another, reason frees the conscience and respect for veracity and the rights of others requires a full disclosure. He was a devisee under the will and such title as he took thereunder passed by his deed to Bess Jimmerson Jones burdened with his conduct.

Then, there are pragmatic reasons why the judgment in the cancellation suit should fix the title of the litigants. These reasons are best stated in 1 Freeman on Judgments, pp. 602–603:

"The law aims to invest judicial transactions with the utmost permanency consistent with justice. That the formal pronouncements of legal tribunals upon causes submitted to them should enjoy every possible degree of finality and conclusiveness would seem to be a necessary predicate to the proper functioning of the courts themselves. To permit their decisions to be evaded or disregarded for insufficient cause or in modes not sanctioned by law would tend to disrupt the administration of justice and bring courts into disrepute. Public policy requires that a term be put to litigation and that judgments, as solemn records upon which valuable rights rest, should not lightly be disturbed or overthrown. * * *"

■ Though no objection was made to the rendition of a judgment at the time, appellants in their supplemental brief question the jurisdiction of the District Court to render judgment in this partition suit because the judgment was not rendered at the term at which the case was tried or the next term thereafter. The 4th District Court of Rusk County has six statutory terms each year, a term beginning on the first Monday in January and the first Monday of the 3rd, 5th, 7th, 9th and 11th calendar months in each year. Terms continue until the Saturday before the beginning of the next succeeding term. Article 199, V.T.C.S. This case went to trial on June 20, 1955, and was completed the following day insofar as to taking of testimony and oral arguments were concerned. The judge then took the case under consideration for study before decision and on June 30, 1955, extended the May-June term, at which the case was tried, to the 30th day of July, 1955, and thereafter by seven successive timely extension orders extended that term through the 30th day of April, 1956. He entered judgment from which this appeal arises on March 28, 1956. The Rusk County District Court is governed by Rule 330, Vernon's Texas Rules of Civil Procedure. Subdivision (j) of that Rule provided that:

"If a case or other matter is on trial or in process of hearing when the term of court expires, such trial, hearing or other matter may be proceeded with at the next term of court. * * *"

There are numerous cases holding that in the *absence of an order extending a term*, the trial of the case must be completed and judgment entered as required by subdivision (j) of the Rule at the term in which the case is tried or the next term. In each of those cases there is an absence of an order extending the trial term. In one of the cases, British General Ins. Co. v. Ripy, Tex.Com.App., 130 Tex. 101, 106 S.W.2d 1047, 1049, consideration is given to Article

1923, V.T.C.S. which permits the trial judge in his discretion to extend the term of a court until the conclusion of a pending trial and the Acts of the Legislature setting up Special Practice Rules for certain district courts Article 2092, V.T.C.S. Section 28 of this Special Practice Act is the source of subdivision (j) of Rule 330 and is identical in language. It was brought forward into the Rules without change. Article 1923 is not listed among those repealed by the Rules. The British General Ins. Co. v. Ripy, supra, opinion held that the language of the two Articles is not in conflict and that Article 1923 is supplementary to the Special Practice Rule. The language of that case is as follows:

"The Legislature, in providing statutory extension of the term at which the procedure began, recognized that ordinarily a trial would be completed at the term at which it began, or the next term, and further that the then existing procedural law was adequate in case of an unfinished trial at the close of any term, regardless of whether it was the next after the trial began or any subsequent term. * * *"

A construction that Article 1923 is conflicting and not supplementary to Rule 330 (j) would result in imputing to the Legislature and the Supreme Court the improbable intent to make it impossible to try a case that consumes more than two terms in its trial. Such lengthy cases are infrequent but theoretically they may and in practice they do arise and it would be rather far fetched to conclude that the Legislature and the Supreme Court designed to leave such cases without a forum for trial. A construction that a judge may extend his term, is more in keeping with an orderly administration of justice and, deprives no one of a right to litigate a case in court. Should a trial judge abuse this discretion the supervisory processes of the appellate courts are available to curb his excesses.

The district judge having properly extended and successively re-extended the May-June term of 1955, and entered the judgment before the term as extended expired, appellants' point in this regard is overruled.

No error being shown, all of appellants' points are overruled and the judgment of the trial court is affirmed.

FANNING, J. concurs.

DAVIS, Justice.

I dissent. I think the finding of the trial court that the judgment in Cause No. 18,683 was entered as the result of a mutual mistake entitles the appellants to have that judgment set aside. I want to stress that the reasoning of the majority on the question of estoppel could be applicable only in this case to Henry Jimmerson, because he is the only party who knew about the will and having surrendered any claim to any of the estate, the question of "privity in interest" has no application.

When Mrs. E. B. Jimmerson died, the title to her property vested according to the will and when the will was probated, the title became as finally fixed as could be. Until the will is set aside, or cancelled by suit commenced in a proper court, the title to the property is permanently fixed in the appellants. White v. White, Tex. Com.App., 142 Tex. 499, 179 S.W.2d 503, opinion adopted by Supreme Court. Many of the matters discussed in the majority opinion, as I view the law, are matters that are within the exclusive jurisdiction of the County Court.

The question of res adjudicata has no application here as relates to Cause No. 18,683. Elliott v. Elliott, Tex.Civ.App., 208 S.W.2d 709, wr. ref.; Buchner v. Wait, Tex.Civ.App., 137 S.W. 383, wr. ref.; In re Fowler's Estate, Tex.Civ.App., 87 S.W. 2d 896, wr. dism. It would be a harsh rule,

indeed, to hold that the intent of a testator could be completely destroyed because of a mutual mistake on the part of third parties to the effect that a testator did not make a will. There are many cases where transactions relative to property have been undone because a valid will was subsequently discovered and probated. There is no case cited by the majority or by the appellees which holds that a mutual mistake will completely destroy a will, and I have found none. The will has been probated by a judgment of a court of competent jurisdiction and until that order of probate is set aside by a court of competent jurisdiction, that probate order is res adjudicata on all issues pertaining to the title to the property which the will conveyed.

The judgment of the trial court is void. The case was tried before the court without a jury and judgment was rendered, signed and entered at the 8th succeeding term thereafter. Coats v. Garrett, Tex.Civ. App., 283 S.W.2d 289. The trial court attempted to maintain jurisdiction of the case by eight orders of extension. The terms of the District Court of Rusk County being continuous terms, the court was without authority by rule or statute to extend any term of his court. In the case of Jones v. Campbell, Tex.Civ.App., 188 S.W. 2d 679-683, wr. ref., the court said: "No necessity could arise for the extension of any term of such court. * * *" This is a case where the District Court of Denton County has continuous terms and that was what the court was referring to. All courts that have continuous terms are governed by the "Special Practice Act" and the authority for the extension of terms of court have no application. The authority for the extension of the terms of court apply only to the district courts that do NOT have continuous terms. Pelham v. Sanders, Tex.Civ.App., 290 S.W.2d 684.

The judgment of the trial court should be set aside and the appeal dismissed.