Elroy M. SATTERLEE, Tax Assessor-Collector, Pasadena Independent School District, et al., Appellants,

v.

GULF COAST WASTE DISPOSAL AUTHORITY et al., Appellees.

No. 8025.

Court of Civil Appeals of Texas, Beaumont.

Dec. 29, 1977.

Rehearing Denied Jan. 19, 1978.

Stanley D. Baskin, Pasadena, Joe Resweber, County Atty., Harris County, Houston, for appellants.

Rufus Wallingford, Frank Harmon, M. L. Skelton, Donald B. McFall, Ben Rice, Lawrence L. Bellatti, Houston, for appellees.

CLAYTON, Justice.

This is an appeal by the appellants, Carl S. Smith, Tax Assessor-Collector, Harris County, Texas, and Elroy M. Satterlee, Tax Assessor-Collector, Pasadena Independent School District, from an adverse judgment rendered by the 152nd District Court of Harris County, Texas, declaring certain real property and improvements thereon, owned by appellee, Gulf Coast Waste Disposal Authority (hereinafter referred to as "the Authority"), exempt from ad valorem taxation. The other appellees, Champion International Corporation, Atlantic Richfield Company, Air Products & Chemicals, Inc., Crown Central Petroleum Corporation, and Petro-Tex Chemical Corporation (hereinafter referred to as "the participating industries"), were third-party defendants against whom the appellants sought to collect ad valorem taxes on the subject property. The determination by the trial court that the property was exempt from ad valorem taxation resulted in a take nothing judgment with respect to the appellants' third party action.

This was a nonjury trial, and the trial court filed findings of fact and conclusions of law in the following particulars:

1. The Authority is a governmental agency and body politic and corporate of the State of Texas.
2. The Authority is the owner of the property involved herein.
3. The property is devoted exclusively to the use and benefit of the public.
4. The property is exclusively owned by the Authority.

Based upon the above findings, the trial court held that the property is exempt from ad valorem taxation, and that the defendants are not entitled to recover the ad valorem taxes which they have levied and assessed against the property from the plaintiff and the third-party defendants.

Appellants attack the judgment of the trial court on the grounds that the evidence is insufficient to support the finding that the subject property is devoted exclusively to the use and benefit of the public, and that the trial court erred in finding the property to be exclusively owned by the Authority, and erred in holding the property exempt from taxation because there is no constitutional or statutory provision providing for such exemption.

The evidence presented on the trial before the court shows the Authority is a conservation and reclamation district created pursuant to *Tex.Const. art. XVI, § 59,* and is a governmental agency and body politic and corporate of the State of Texas. Enabling legislation entitled the Gulf Coast Waste Disposal Authority Act [*Tex.Rev.Civ. Stat.Ann. art. 7621d–2 (Supp. 1970)*] was passed in 1969. The Authority was created by the legislature to develop and implement a waste control management program for Harris, Galveston, and Chambers Counties (*art. 7621d–2 § 1.01,* Gulf Coast Waste Disposal Authority Act). The Authority operates approximately twenty plants or facilities, which are engaged in the treatment of both residential and industrial wastes. All of these facilities are operated by the Authority and are staffed with Authority personnel.

Pursuant to *Tex.Rev.Civ.Stat.Ann. art. 7621d–2 (Supp. 1970)* the Authority is authorized to acquire facilities by purchase, gift, or lease, and is empowered to issue its bonds for the acquisition and construction of its waste treatment facilities. The Authority has the power of eminent domain and the power to tax. The property in dispute here, known as the Washburn Tunnel Plant, was acquired by the Authority through proceeds from the sale of its bonds.

In accordance with its statutory mandate to abate and prevent water pollution through the operation and ownership of treatment facilities, the Authority purchased approximately thirty-five acres of land in Harris County from Champion International Corporation, and after such purchase, additional waste treatment improvements were constructed thereon, which were also financed through the sale of bonds. In connection with the purchase of the Washburn Tunnel Plant, the Authority entered into an agreement with five indus-

tries located on the Houston Ship Channel. These industries are referred to as the participating industries. This agreement obligates the industries to use the plant for treatment of their waste.

While the facilities agreement applies to and obligates the participating industries, the agreement specifically provides that the Authority may enter into contracts with other persons for the treatment of industrial wastes with the approval of the participating industries, which approval cannot be unreasonably withheld.

The plant is designed for the aerobic treatment of industrial waste. The liquids generated by the treatment are discharged into the Houston Ship Channel, and the solids are dealt with by the Authority's sludge handling equipment. The plant is now engaged in treating the wastes of all five of the participating industries, plus the wastes from the General American Transportation Corporation (GATX). Additionally, the Authority regularly reserves approximately ten percent of the capacity of the plant for use by "drop-in" customers. The Authority has entered into a long-term (twenty-five years) contract with GATX for the treatment of its wastes. The Atlantic Richfield Co. has been ordered by a district court to use the Authority's plant facilities. All of the regulatory permits required to discharge the treated wastes are held in the name of the Authority. The Authority is currently negotiating with both the City of Pasadena and Harris County for the treatment of wastes generated by the plant itself and the City of Pasadena's sewage system.

The evidence further shows that no one has exercised any control over the Washburn Tunnel facility other than the employees of the Authority, and the Authority can refuse and has refused to treat the waste of the participating industries. Further, the Authority is responsible for the quality of the waste dumped into the Houston Ship Channel. *Tex.Const. art. VIII, § 2(a)* provides: ".  .  . the legislature may, by general laws, exempt from taxation public property used for public purposes .  .  ."

*Tex.Rev.Civ.Stat.Ann. art. 7150, § 4 (1960)* provides: "All property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof .  .  .  ." is exempt from taxation.

*Tex.Const. art. VIII, § 2(a)* is not self-enacting. It simply authorizes the legislature to exempt property from taxation within the limits of its provisions, namely: public property used for public purposes. This has been construed to mean publicly owned property used for public purposes. *Leander Ind. Sch. Dist. v. Cedar Park Water Sup. Corp.*, 479 S.W.2d 908 (Tex.1972).

Appellants contend that the property in dispute, the Washburn Tunnel Plant, does not belong exclusively to the Authority, in that the conditions of the facilities agreement with the participating industries and the restrictions contained in the deed under which the Authority purchased the property reflects that the Authority received only an equitable interest, an easement, and a right to use the property. We do not agree.

The conditions in the facilities agreement referred to in effect provides that the Authority will receive waste from each participant, expand capacity at the request of any participant, and restrict the use of the subject property to the use of the participants unless otherwise agreed by all participants. These conditions affect the use of the property and not the legal title. We have already seen, from the evidence referred to above, that the property is used by industries other than those made parties to the facilities agreement. GATX is not one of the participating industries, and it is using the facilities under a twenty-five year contract. The Authority regularly reserves approximately ten percent of the capacity of the Washburn Tunnel Plant for use by "drop-in" customers. Atlantic Richfield Co. has been ordered to use the Authority's facilities by a district court. We do not agree with appellants' contentions that those conditions prevent a showing of exclusive ownership in the Authority. The Authority holds record title and is in exclusive possession of the property. This is

clearly sufficient to constitute the Authority the exclusive owner within the holding of the *Leander* case and *Tex.Rev.Civ.Stat. Ann. art. 7150 § 4 (1960)*. *Sebastian Independent School Dist. v. Rallenger*, 297 S.W.2d 238 (Tex.Civ.App.—San Antonio 1956, no writ).

■ Appellants further contend that exclusive ownership cannot exist because the deed to the Authority contains a possibility of a reverter. The deed conveys the property to the Authority "so long as the Subject Property is used as a facility for the treatment of 'Industrial Waste' . . . and upon cessation of such use, the Subject Property . . . shall automatically revert to Grantor."

The record reflects the Authority's ownership of the property is in fee subject only to a possibility of a reverter at some indeterminate time, at least twenty-five years in the future because of the contract with GATX and perhaps longer because of the district court's order with reference to Atlantic Richfield. The possibility of a reverter does not prohibit fee simple title from vesting in the hands of the Authority. *Texas Turnpike Company v. Dallas County*, 153 Tex. 474, 271 S.W.2d 400 (1954); *Dickenson v. Board of Trustees*, 204 S.W.2d 418 (Tex. Civ.App.—Fort Worth 1947, writ ref'd).

The evidence presented to the trial court was of such probative value as to support the trial court's findings that the subject property is exclusively owned by the Authority.

■ There can be no question that the property in dispute is used for public purposes as is required under the holding in the *Leander* case, for it to be exempt under *Tex.Rev.Civ.Stat.Ann. art. 7150 § 4 (1960)*.

The legislature has declared in *Tex.Rev. Civ.Stat.Ann. art. 7621d–2 § 1.02 (Supp. 1970)*:

"It is hereby found and declared that the quality of waters in Chambers, Galveston, and Harris Counties is materially affected by the disposal of wastes throughout those counties; . . . that solid wastes, as well as other kinds of waste, may impair water quality by seepage, drainage, and otherwise; that creation of the Gulf Coast Waste Disposal Authority would advance the established policy of the state to maintain the quality of the waters in the state consistent with the public health and public enjoyment thereof . . . ; and that impending shortage of water in the district for beneficial uses requires that all reasonable measures be taken to prevent and abate water pollution, and to reclaim polluted water for beneficial uses."

The property in question is located in the heart of the State's largest industrial area and is engaged in a sophisticated treatment of industrial waste. The Authority's plant is open to users other than the participating industries and is unquestionably devoted to the public purpose of treating and purifying liquid discharged into the State's waters. This evidence is of probative value to support the trial court's findings that the Authority's property is devoted exclusively to the use and benefit of the public.

■ In view of the trial court's findings that the subject property is exclusively owned by the Authority and is devoted exclusively to the use and benefit of the public and that the Authority is a body politic and corporate of the State of Texas, all of which findings are supported by evidence of probative value, we hold that the subject property owned by appellees is exempt from ad valorem taxes under the provisions of *Tex.Rev.Civ.Stat.Ann. art. 7150 § 4 (1960)*.

We further hold that such property is exempt from such taxation under the provisions of *Tex.Const. art. XI, § 9*, under authority of our Supreme Court in *Lower Colorado River Authority v. Chemical B. & T. Co.*, 144 Tex. 326, 190 S.W.2d 48, 50 (1945), wherein the Court states:

". . . that LCRA is a governmental agency serving a public purpose . . . and that all benefits derived from its efforts are public benefits. Hence, its property is public property devoted exclusively to public use and is exempt from taxation under Art. XI, Sec. 9, of the Constitution . . . ."

We are aware of the decision in the *Leander* case, supra 479 S.W.2d at 913, wherein it refers to the "erroneous misinterpretation" in the LCRA case, but we also note the court states, "The holding in Lower Colorado River Authority will not be disturbed since it is now firmly embedded in our jurisprudence  .   .   . ."

Appellants further complain that the trial court erred in holding that all costs of court should be taxed against the parties incurring the same. We agree with this point. Numerous cases have held that taxing authorities are exempt from payment of court costs in delinquent tax suits, and this is true even when the taxpayer initiates the action. *Nacogdoches Independent School Dist. v. McKinney*, 513 S.W.2d 5 (Tex.1974); *City of Amarillo v. Paramount Terrace Christian Church of Amarillo*, 530 S.W.2d 323 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.); *Seguin Independent School District v. Blumberg*, 402 S.W.2d 552 (Tex. Civ.App.—San Antonio 1966, writ ref'd n.r. e.). This part of the trial court's judgment is reformed to provide that all court costs incurred by appellees are adjudged against them, and no costs are adjudged against appellants.

The judgment of the trial court as reformed is affirmed.

AFFIRMED AS REFORMED.